1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11    INTENT BRANDS, INC.,

12                  Plaintiff,                    No. 2:24-cv-02499-TLN-CKD

13           v.

14    CALNUTRI, INC., COMMON                      **ORDER**
      COLLABS, LLC, and WILDPACK
15    BEVERAGE, INC.,

16                  Defendants.

17

18          This matter is before the Court on Defendants Wildpack, Inc.'s ("Wildpack"), CalNutri,

19    Inc.'s ("CalNutri"), and Common Collabs, LLC's ("Common Collabs") (collectively,

20    "Defendants") Motions to Dismiss.  (ECF Nos. 31, 33, 49.)  Plaintiff Intent Brands, Inc.

21    ("Plaintiff") filed oppositions.  (ECF Nos. 42, 43, 50.)  Wildpack and CalNutri filed replies.

22    (ECF Nos. 47, 48.)  For the reasons set forth below, Wildpack's motion is GRANTED,

23    CalNutri's motion is GRANTED, and Common Collabs's motion is GRANTED in part and

24    DENIED in part.

25    ///

26    ///

27    ///

28
                                                  1

## I.     FACTUAL AND PROCEDURAL BACKGROUND[1]

The instant action arises out of Defendants' alleged failure to disclose a manufacturing problem that caused "squishy cans" and heat resistant mold spore contamination of Plaintiff's non-alcoholic beverage, Sly.  (*See* ECF No. 29.)  On August 22, 2022, Plaintiff entered into an agreement with CalNutri (the "CalNutri Agreement"), in which CalNutri would act as the third-party manager for supply chain and production for Plaintiff's beverage.  (*Id.* at 3.)  After CalNutri was hired, CalNutri communicated with Wildpack on behalf of Plaintiff and entered into an agreement to manufacture Sly (the "Services Agreement").  (*Id.* at 4.)  Plaintiff alleges Wildpack was aware CalNutri was acting on behalf of Plaintiff, and Wildpack even required Plaintiff to sign a non-disclosure agreement prior to negotiations between Wildpack and CalNutri.  (*Id.*)  Plaintiff asserts it is a third-party beneficiary to the Services Agreement.  (*Id.*)

Despite neither Plaintiff nor CalNutri having manufacturer's coverage or capability for replacement and reimbursement in the event of inventory loss due to manufacturing, Plaintiff proceeded with the third-party assignment for production at Wildpack based on CalNutri's assurances.  (*Id.* at 4–5.)  On November 22, 2022,[2] Brandon Martin at CalNutri stated that CalNutri finalized the agreement with Wildpack's co-founder, who assured that if anything catastrophic happened on the opening order trial run, Wildpack would stand by their mistake.  (*Id.* at 5.)  A final version of the Services Agreement was approved on November 22, 2022.  (*Id.*)

CalNutri informed Plaintiff that during palletizing of the product, Wildpack discovered a manufacturing problem causing "squishy cans" and removed 1.5 pallets (approximately 3,750 cans) stating they were unsuitable for release.  (*Id.*)  Plaintiff alleges Wildpack and CalNutri failed to disclose the true cause for this issue, which was the improper sealing of cans.  (*Id.*)  Wildpack presented the remainder of the inventory as cleared for shipping and commercial release from the warehouse.  (*Id.*)  On December 30, 2022, Plaintiff discovered illegible, shifted

---

[1]     The instant factual background is taken largely verbatim from Plaintiff's Second Amended Complaint ("SAC").  (ECF No. 29.)

[2]     Plaintiff's SAC alleges the date is November 22, 2024.  (*Id.* at 5.)  However, given all the other event dates surrounding this date occurred in 2022, the Court finds the reasonable inference is that the date is November 22, 2022.

1    lot codes, expiration stamps, and completely missing stamps on Wildpack manufactured products.

2    (*Id.*)  Plaintiff alleges it unknowingly released non-merchantable leaking product to salespeople,

3    distributors, event coordinators, investors, collaborative partners, and buyers, which had to be

4    recalled and recovered, halting product sales and causing preventable harm to Plaintiff's brand

5    and reputation.  (*Id.* at 6.)  Plaintiff further alleges neither CalNutri nor Wildpack attempted to

6    remedy the non lot-coded product.  (*Id.*)

7         Plaintiff further discovered at a promotional event to launch Plaintiff's product that

8    Wildpack failed to dissolve and mix the ingredients per manufacturing instructions provided by

9    Plaintiff.  (*Id.*)  Plaintiff informed CalNutri and Wildpack of this event and sent photos to

10   CalNutri and Wildpack's attorney, Elizabeth Thampy.  (*Id.*)  The accepted goods were sent to a

11   repackaging facility to package the product into four packs and apply promotional stickers, at

12   additional cost to Plaintiff and Plaintiff's partner, FITGMR.  (*Id.* at 7.)  Plaintiff was unaware the

13   inventory was poorly sealed and would eventually leak enough to form puddles and collapse in a

14   California warehouse, rendering the promotional stickered product unsuitable for commercial

15   release by both direct to consumer and commercial distribution sales channels.  (*Id.*)  CalNutri

16   managed the promotional repack project with FITGMR.  (*Id.*)  Plaintiff asked CalNutri to inspect

17   this inventory as Wildpack had not yet provided an explanation for the true cause of the "squishy

18   cans" or the records of inspection, approval, and release for commercial distribution.  (*Id.*)

19   During this promotional sticker and repack process, approximately 8,000 additional cans were

20   identified as defective.  (*Id.*)  CalNutri reported this finding to Plaintiff but failed to hold

21   Wildpack accountable to the purchase order and terms of the Services Agreement.  (*Id.*)

22        Plaintiff alleges that since it was unaware the entire Wildpack inventory was

23   unmerchantable, it sent the released product that had been inspected and approved by Wildpack to

24   customers, influencers, several event coordinators, potential brand ambassadors, and potential

25   investors.  (*Id.* at 8.)  Plaintiff believed the failure to disclose the "squishy cans" was done so

26   Plaintiff would accept the inventory as a finished good suitable for commercial release and

27   CalNutri would pay Wildpack for production.  (*Id.*)  CalNutri informed Plaintiff the cause of the

28   squishy cans was a "nitrogen problem," and Wildpack inspected the remaining inventory and

1    approved it for release for shipping.  (*Id.*)  Plaintiff alleges CalNutri failed to properly assess the

2    risk to the released inventory, determine the true cause of the squishy cans, recognize the

3    manufacturing failure, and hold Wildpack accountable.  (*Id.*)

4         Plaintiff alleges Wildpack and CalNutri were aware of a potential non-conforming

5    ingredient prior to production runs but failed to disclose this information to Plaintiff.  (*Id.* at 9.)

6    Plaintiff further alleges it was not properly informed of equipment failures that affected the

7    product inventory before, during, and after production runs and multiple equipment line failures

8    were deliberately concealed.  (*Id.*)  Beginning in March 2023, Plaintiff received many reports

9    from customers, influencers, potential brand ambassadors, and potential investors that the product

10   was unmixed, clumpy, and had foreign debris.  (*Id.*)  Further, the released cans began leaking into

11   packaging, pantries, and the storage warehouse the product was being stored in. (*Id.* at 10.)

12   Plaintiff alleges Wildpack did not follow the batch instructions and did not mix the formulation

13   according to specifications, despite Plaintiff alerting Wildpack to the problem of undissolved and

14   poorly mixed product during the production process.  (*Id.* at 9–10.)

15        In February 2023, the defective product from Wildpack was sent to Common Collabs to

16   review the defective product, the formulation, and manufacturing specifications to determine

17   whether Common Collabs was willing to proceed with production of Plaintiff's product.  (*Id.* at

18   10.)  Common Collabs agreed to production and deemed the cans manufactured at Wildpack were

19   not properly sealed, which caused them to leak.  (*Id.*)  CalNutri entered into an agreement with

20   Common Collabs on behalf of Plaintiff.  (*Id.*)  In April 2023, Common Collabs ran four

21   production runs of two SKUs in two different packaging types and, a few weeks later, Common

22   Collabs ran a prototype run for the remaining four SKUs.  (*Id.* at 11.)  Plaintiff alleges that during

23   these manufacturing runs, heat resistant mold spores contaminated the product runs.  (*Id.*)  On

24   June 9, 2023, Plaintiff began to receive consumer complaints and photos indicating mold growth

25   and a contamination problem, which is believed to be from the manufacturing at the Common

26   Collabs facility.  (*Id.*)  Plaintiff notified Common Collabs and CalNutri immediately and was

27   forced to stop sales, contact all customers requesting they discard their defective product, refund

28   orders for product that could not be released, intercept product sent to a sponsorship for children

4

1  in Florida, pull product from a distributor and retail buyers in California, and halt all activity for

2  sales.  (*Id.*)

3        Shortly after the mold was discovered, Common Collabs agreed to file an insurance claim

4  on Plaintiff's behalf and the two entities hired an attorney (paid for by Plaintiff) to file a claim.

5  (*Id.* at 12.)  Common Collabs later decided to file the claim on behalf of itself, blocked Plaintiff's

6  access to the insurer, and broke communication with Plaintiff as a penalty for attempting to

7  access the coverage Plaintiff had been promised in the event of a recall and reimbursement for

8  recall-related expenses.  (*Id.*)  CalNutri presented Plaintiff with an agreement ensuring recall-

9  related expenses would be covered under the manufacturer's policy, which would serve as the

10  primary policy and name Plaintiff as additionally insured.  (*Id.*)  Plaintiff alleges Common

11  Collabs and CalNutri failed to execute this insurance coverage prior to production as agreed upon,

12  causing Plaintiff not to be named as additionally insured on Common Collabs' policy.  (*Id.* at 13.)

13        From that point onward, Plaintiff attempted to resolve these issues with Defendants with

14  little success.  (*Id.* at 13–21.)  Plaintiff filed the instant action in Placer County Superior Court on

15  July 10, 2024 (ECF No. 1-3 at 2), and Wildpack removed the action to this Court on September

16  12, 2024 (ECF No. 1).  On October 28, 2024, Plaintiff filed the operative SAC, alleging claims

17  for: breach of fiduciary duty – failure to use reasonable care against CalNutri; breach of contract

18  against CalNutri, Common Collabs, and Wildpack; negligence against CalNutri, Wildpack, and

19  Common Collabs; intentional misrepresentation against Wildpack and Common Collabs;

20  negligent misrepresentation against Wildpack, CalNutri, and Common Collabs; and breach of

21  fiduciary duty – duty of undivided loyalty.  (ECF No. 29 at 22–35.)  The instant motions to

22  dismiss were filed by Wildpack, CalNutri, and Common Collabs on November 12, 2024,

23  November, 13, 2024, and December 27, 2024, respectively.  (ECF Nos. 31, 33, 49.)

24      **II.**    **STANDARD OF LAW**

25        A motion to dismiss for failure to state a claim upon which relief can be granted under

26  Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of a complaint.

27  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Rule 8(a) requires that a pleading contain a

28  "short and plain statement of the claim showing that the pleader is entitled to relief."  *See*

1    *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).  Under notice pleading in federal court, the

2    complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon

3    which it rests."  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted).

4    "This simplified notice pleading standard relies on liberal discovery rules and summary judgment

5    motions to define disputed facts and issues and to dispose of unmeritorious claims."  *Swierkiewicz*

6    *v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

7        On a motion to dismiss, the factual allegations of the complaint must be accepted as true.

8    *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  A court is bound to give the plaintiff the benefit of every

9    reasonable inference drawn from the "well-pleaded" allegations of the complaint.  *Retail Clerks*

10   *Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege "'specific

11   facts' beyond those necessary to state his claim and the grounds showing entitlement to relief."

12   *Twombly*, 550 U.S. at 570.

13       Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of

14   factual allegations."  *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

15   While Rule 8(a) does not require detailed factual allegations, "it demands more than an

16   unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.  A

17   pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the

18   elements of a cause of action."  *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678

19   ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

20   statements, do not suffice.").  Moreover, it is inappropriate to assume the plaintiff "can prove

21   facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not

22   been alleged."  *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459

23   U.S. 519, 526 (1983).

24       Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough

25   facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim

26   has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

27   reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at

28   678.  While the plausibility requirement is not akin to a probability requirement, it demands more

1    than "a sheer possibility that a defendant has acted unlawfully." *Id.* This plausibility inquiry is "a

2    context-specific task that requires the reviewing court to draw on its judicial experience and

3    common sense." *Id.* at 679.

4         In ruling on a motion to dismiss, a court may only consider the complaint, any exhibits

5    thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201.

6    *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v.*

7    *Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

8         If a complaint fails to state a plausible claim, "a district court should grant leave to amend

9    even if no request to amend the pleading was made, unless it determines that the pleading could

10    not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th

11    Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

12         **III.    ANALYSIS**

13         Defendants argue Plaintiff fails to state claims for breach of contract, negligence,

14    intentional misrepresentation, and negligent misrepresentation, and Plaintiff's prayer for an award

15    of punitive damages should be dismissed. (*See* ECF Nos. 31, 33-1, 49.) CalNutri further argues

16    Plaintiff fails to state claims for breach of fiduciary duty and its prayer for an award of attorney's

17    fees and costs should be dismissed. (ECF No. 33-1.) The Court will consider each of Plaintiff's

18    claims in turn and address the specific arguments each Defendant raises.[3]

19         A.    Breach of Fiduciary Duty (Claims One and Twelve)[4]

20         To establish a breach of fiduciary claim, a plaintiff must plead: "(1) the existence of a

21    fiduciary duty; (2) a breach of the fiduciary duty; and (3) damage proximately caused by the

22    breach." *Winebarger v. Penn. Higher Ed. Assistance Agency*, 411 F. Supp. 3d 1070, 1091 (C.D.

23    _____

24    [3]    The Court notes Wildpack filed a request for judicial notice in support of its motion.
     (ECF No. 31-4.) However, because the Court does not rely on any of the documents Wildpack
25    seeks to judicially notice, this request is DENIED as moot.

26    [4]    Plaintiff explicitly brings Claim One against CalNutri, but does not bring Claim Twelve
     against any specific Defendant. (*See* ECF No. 29.) However, Plaintiff only names CalNutri in
27    the allegations for Claim Twelve. (*Id.* at 33–34.) As CalNutri's arguments in the instant motion
     appear to address both Claims One and Twelve (*see* ECF No. 33-1 at 7–9), the Court construes
28    CalNutri's motion as seeking to dismiss both Claims One and Twelve.

1   Cal. 2019) (citing *Stanley v. Richmond*, 35 Cal. App. 4th 1070, 1086 (1995)). Whether a

2   fiduciary duty exists is a question of law to be answered by the court. *Id.* (citing *Ky. Fried*

3   *Chicken of Cal. v. Super. Ct.*, 14 Cal. 4th 814, 819 (1997)).

4   　　CalNutri argues there is no fiduciary relationship that was established by agreement or by

5   law. (ECF No. 33-1 at 8.) CalNutri contends there is no agreement that includes or contemplates

6   a relationship beyond what is stated in its contract with Plaintiff. (*Id.* at 8–9.) CalNutri also

7   argues Plaintiff provides no relevant or specific facts in the SAC that give rise to a fiduciary

8   relationship. (*Id.* at 9.) In opposition, Plaintiff asserts the CalNutri Agreement creates a fiduciary

9   relationship between Plaintiff and CalNutri in which CalNutri agrees to handle certain aspects of

10  Plaintiff's business and communicate with supply chain partners on Plaintiff's behalf. (ECF No.

11  43 at 4–5.) Plaintiff notes the CalNutri Agreement required Plaintiff not to communicate or have

12  any business dealing with supply chain partners without CalNutri's authorization, and therefore

13  Plaintiff was completely trusting CalNutri with these business dealings. (*Id.* at 5.) In reply,

14  CalNutri maintains no heightened fiduciary obligation is contemplated by the CalNutri

15  Agreement, which is merely a services agreement. (ECF No. 48 at 4–5.)

16  　　Here, CalNutri is correct that the case law Plaintiff cites all involve longstanding and well-

17  recognized fiduciary duties. (ECF No. 48 at 4–5.) The Court finds that Plaintiff fails to develop a

18  substantive argument to explain how those fiduciary duties are analogous to Plaintiff's

19  relationship with CalNutri in the instant matter. (*See* ECF No. 43 at 4 (citing *Barbara A. v. John*

20  *G.*, 145 Cal. App. 3d 369 (1983) (noting "a fiduciary relationship is a recognized legal

21  relationship such as guardian and ward, trustee and beneficiary, principal and agent, or attorney

22  and client," whereas a "confidential relationship may be founded on a moral, social, domestic, or

23  merely personal relationship as well as on a legal relationship" (internal quotations omitted));

24  *Sime v. Malouf*, 95 Cal. App. 2d 82, 98–99 (1949) (noting that partners or joint venturers may

25  continue to have a fiduciary relationship after dissolution of their association); *GAB Bus. Servs.*,

26  *Inc. v. Lindsey & Newsom Claim Servs., Inc.*, 83 Cal. App. 4th 409, 417 (2000), *as modified*

27  (Sept. 14, 2004), *as modified on denial of reh'g* (Sept. 26, 2000), *overruled in part on other*

28  *grounds by Reeves v. Hanlon*, 33 Cal. 4th 1140 (2004) (concluding corporate officers who

8

1   participate in management of the corporation are fiduciaries of the corporation).  Plaintiff does

2   not cite to any case law for the proposition that a "client" and "service provider" relationship —

3   in which the service provider requires the client to refrain from communicating with supply chain

4   partners — constitutes a fiduciary relationship.  Plaintiff therefore fails to state the first element

5   of this claim — the existence of a fiduciary duty.

6         Nevertheless, the Court cannot determine at this juncture "that the pleading could not

7   possibly be cured by the allegation of other facts.'"  *Lopez*, 203 F.3d at 1130.  Accordingly,

8   CalNutri's motion to dismiss Plaintiff's breach of fiduciary duty claims (Claims One and Twelve)

9   is GRANTED with leave to amend.

10                    B.    Breach of Contract (Claims Three and Four)

11        To state a breach of contract claim, a plaintiff must allege: (1) the existence of a contract;

12  (2) plaintiff's performance of the contract or excuse for failure to perform; (3) defendant's breach

13  of the contract; and (4) the resulting damage to plaintiff.  *D'Arrigo Bros. of Cal. v. United*

14  *Farmworkers of Am.*, 224 Cal. App. 4th 790, 800 (2014).  "In California . . . it is well established

15  that under some circumstances a third party may bring an action for breach of contract based

16  upon an alleged breach of contract entered into by other parties."  *Goonewardene v. ADP, LLC*, 6

17  Cal. 5th 817, 826–27 (2019).  The California Supreme Court explained:

18                [A] review of this court's third party beneficiary decisions reveals
                  that our court has carefully examined the express provisions of the
19                contract at issue, as well as all of the relevant circumstances under
                  which the contract was agreed to, in order to determine not only (1)
20                whether the third party would in fact benefit from the contract, but
                  also (2) whether a motivating purpose of the contracting parties was
21                to provide a benefit to the third party, and (3) whether permitting a
                  third party to bring its own breach of contract action against a
22                contracting party is consistent with the objectives of the contract and
                  the reasonable expectations of the contracting parties.  All three
23                elements must be satisfied to permit the third party action to go
                  forward.
24

25  *Id.* at 829–30.  "While it is not necessary that a third party be specifically named, the contracting

26  parties must clearly manifest their intent to benefit the third party."  *Kalmanovitz v. Bitting*, 43

27  Cal. App. 4th 311, 314 (1996).  Specifically, it must appear the parties' intent was to ensure the

28  third party personally benefited from the contract's provisions.  *Id.*

                                                9

1                              *i.     Wildpack's Argument*

2          Wildpack argues Plaintiff's breach of contract claim fails because (1) Plaintiff has not and

3    cannot allege a direct contractual relationship with Wildpack and (2) the Services Agreement

4    expressly disclaims any intent to benefit third parties.  (ECF No. 31 at 13–14.)  In opposition,

5    Plaintiff asserts its claim for breach of contract is adequately pleaded and references a copy of the

6    contract attached to the SAC.  (ECF No. 42 at 5.)  In reply, Wildpack maintains Plaintiff fails to

7    state a claim because there is no third-party beneficiary provision in the contract Wildpack

8    allegedly breached and the SAC does not plausibly allege how Wildpack's conduct caused

9    Plaintiff's damages.  (ECF No. 47 at 2–3, 5–6.)

10         Here, with respect to the first element, Plaintiff alleges CalNutri entered into a contract

11   with Wildpack "on behalf of Plaintiff" and "Plaintiff is a third-party beneficiary to the contract

12   between CalNutri and Wildpack."  (ECF No. 29 at 25.)  Plaintiff maintains it attached a copy of

13   the contract to the SAC (ECF No. 42 at 5), which appears to be Exhibit 2 (ECF No. 29 at 41–70).

14   However, Exhibit 2 appears to be a Wildpack form contract with numerous blanks that have not

15   been filled-in (even with CalNutri's name and information) and the contract is not signed.  (*Id.*)

16   While not necessarily probative, the form contract does contain a "No Third-Party Beneficiaries"

17   provision.  (ECF No. 29 at 50.)  Because Plaintiff has not put forward allegations from which the

18   Court could infer a contractual relationship exists, Plaintiff fails to adequately state the first

19   element and thus fails to state a claim for breach of contract.

20         The Court cannot determine at this juncture "that the pleading could not possibly be cured

21   by the allegation of other facts.'"  *Lopez*, 203 F.3d at 1130.  Accordingly, Wildpack's motion to

22   dismiss Plaintiff's breach of contract claim (Claim Four) is GRANTED with leave to amend.

23                            *ii.     Common Collabs's Argument*

24         Common Collabs argues Plaintiff fails to allege the first element of a breach of contract

25   claim, as the SAC provides no factual basis for concluding Plaintiff and Common Collabs entered

26   a contract and instead alleges CalNutri entered an agreement with Common Collabs.  (ECF No.

27   49 at 4.)  In opposition, Plaintiff asserts it is a third-party beneficiary of the contract between

28   CalNutri and Common Collabs because the intent of the agreement between CalNutri and

                                              10

1    Common Collabs was to benefit Plaintiff and the products were being produced for Plaintiff.

2    (ECF No. 50 at 4.)

3         Here, Plaintiff attaches the agreement between CalNutri and Common Collabs as Exhibit

4    3 to the SAC.  (ECF No. 29 at 10, 71–90.)  The Court notes that although it is only signed by

5    Common Collabs (and not CalNutri), Common Collabs does not dispute that this is the relevant

6    contract at issue.  (*See* ECF No. 49.)  With respect to the first element of breach of contract,

7    Plaintiff alleges it "is a third-party beneficiary to the contract between Common Collabs and

8    CalNutri" and "Common Collabs was aware from the beginning of the negotiations with CalNutri

9    that the contract was to benefit Plaintiff[], as CalNutri was acting as a representative of

10   Plaintiff[]."  (ECF No. 29 at 24.)  With respect to the second element, Plaintiff alleges it

11   "performed all conditions, covenants and promises required on its part to be performed in

12   accordance with the terms and conditions of the contract[.]"  (*Id.*)  With respect to the third

13   element, Plaintiff alleges Common Collabs failed to maintain its duties under the contract ("to

14   manufacture commercially-acceptable beverages on behalf of Plaintiff, ensure that Plaintiff would

15   be protected under a third-party's insurance policy, and to adequately remedy damages in case of

16   recall of the manufactured products") and Plaintiff did not waive or excuse Common Collabs's

17   performance.  (*Id.*)  With respect to the fourth element, Plaintiff alleges it has been damaged.  (*Id.*

18   at 25.)

19        The Court agrees Plaintiff adequately alleges it was the intent of the agreement between

20   CalNutri and Common Collabs to benefit Plaintiff.  Exhibit A to the agreement between CalNutri

21   and Common Collabs, entitled "Products & Specifications" lists Plaintiff's name in the file name

22   for each Excel spreadsheet.  (ECF No. 29 at 82–84.)  Further, the following allegations indicate

23   Common Collabs knew the contract with CalNutri was executed for Plaintiff's benefit: Common

24   Collabs agreed to produce Plaintiff's product after reviewing the defective product from the

25   Wildpack production and determining the cans were not properly sealed; Common Collabs

26   agreed to file an insurance claim on Plaintiff's behalf after mold was discovered in the Common

27   Collabs production; Plaintiff would be named as additionally insured under Common Collabs's

28   manufacturer's policy; Common Collabs was aware Plaintiff was CalNutri's client and the

11

1   agreement was being made for Plaintiff's benefit; Plaintiff provided a $42,000 deposit for its

2   Boost product line to be run at Common Collabs in July 2023; and Common Collabs's CEO

3   stated he would not run Plaintiff's product without Plaintiff signing a "waiver of responsibility."

4   (*Id.* at 10–13, 20.)

5       Based on the foregoing, Common Collabs's motion to dismiss Plaintiff's breach of

6   contract claim (Claim Three) is DENIED.

7               C.    Negligence (Claims Five, Six, and Seven)

8       To state a negligence claim, a plaintiff must allege: (1) the existence of a duty of care; (2)

9   breach of that duty; (3) causation; and (4) damages.  *Merrill v. Navegar, Inc.*, 26 Cal. 4th 465,

10  500 (2001).  "The defendant's duty of care is a prerequisite to any claim for negligence."

11  *Martinez v. Flagstar Bank, FSB*, No. 2:15-cv-01934-KJM-CKD, 2016 WL 3906810, at *6 (E.D.

12  Cal. July 19, 2016) (citing *Nymark v. Heart Fed. Savings & Loan Ass'n*, 231 Cal. App. 3d 1089,

13  1095 (1991)).  Whether a duty of care exists is a question of law to be determined on a case-by-

14  case basis.  *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal. App. 4th 49, 62 (2013).

15               *i.    Wildpack's Argument*

16      Wildpack argues Plaintiff fails to state a negligence claim and the negligence claim is

17  barred by the economic loss rule.  (ECF No. 31 at 16–18.)  The Court will address each issue in

18  turn.

19               *a)    Sufficiency of Plaintiff's Allegations*

20      Wildpack argues Plaintiff's allegations fail to establish a legal duty of care or breach of

21  that duty, and contrary to Plaintiff's assertion, Wildpack was not obligated to name Plaintiff as an

22  insured entity under its insurance policy.  (ECF No. 31 at 16.)  In opposition, Plaintiff contends it

23  properly states a negligence claim as it alleges that Wildpack failed to ensure the beverages were

24  produced in compliance with Plaintiff's standards and specifications, including fully dissolving

25  ingredients, using good manufacturing standards and practices, failed to stamp lot codes and list

26  Plaintiff as an insured on Wildpack's policy, and failed to disclose the true reason for the

27  "squishy cans."  (ECF No. 42 at 7.)  In reply, Wildpack argues Plaintiff misrepresents the duty

28  owed by Wildpack.  (*See* ECF No. 47 at 7.)

1          Here, Plaintiff cites to cases that stand for the proposition that a manufacturer of a

2    dangerous product has a duty of reasonable care to conduct inspections and tests during the

3    course of manufacturing.  (ECF No. 42 at 6–7 (citing *Sheward v. Virtue*, 20 Cal. 2d 410, 412–14

4    (1942) (noting that "if the defective condition of the part could have been disclosed by reasonable

5    inspection and tests, and such inspection and tests had been omitted, the defendant has been

6    negligent"); *Edison v. Lewis Mfg. Co.*, 168 Cal. App. 2d 429, 436 (1959) (extending the principle

7    articulated in *Sheward* to "the manufacturer of any chattel, whether it be a component part or an

8    assembled entity")).)  However, in those cases, the manufacturers owe a duty of care to those

9    whom the manufacturer expects to be endangered by its probable use.  *Sheward*, 20 Cal. 2d at 412

10   (concluding manufacturer of an upholstered beauty parlor metal chair owed a duty of care in the

11   manufacture of the chair to an individual who sustained injuries from sitting in the chair); *Edison*,

12   168 Cal. App. 2d at 436 (noting the manufacturer of a "D" ring component part incorporated into

13   a safety belt used by an oil derrickman could be liable for negligence claim instituted by the

14   widow and minor children of an oil derrickman who fell to his death from an oil well derrick);

15   (*see also* ECF No. 42 at 6 (citing *Putensen v. Clay Adams, Inc.*, 12 Cal. App. 3d 1062, 1076–77

16   (1970) (concluding, in a personal injury action brought by plaintiff who underwent a heart

17   catheterization procedure, a manufacturer of polyethylene tubing used in the procedure had a duty

18   "to use reasonable care and skill in designing it so that it was reasonably safe for the purposes for

19   which it was intended, and for other uses which were reasonably foreseeable")).)  These cases do

20   not stand for the proposition that manufacturers owe a duty of reasonable care to a company who

21   contracts with a manufacturer to produce the product at issue.  The Court therefore finds

22   persuasive Defendant's argument that "Plaintiff's allegations fail to establish any legal duty of

23   care[.]"  (ECF No. 31 at 16.)  Because Plaintiff cannot establish the existence of a duty of care,

24   the Court finds Plaintiff fails to state a negligence claim.

25         The Court cannot determine at this juncture "that the pleading could not possibly be cured

26   by the allegation of other facts.'"  *Lopez*, 203 F.3d at 1130.  Accordingly, Wildpack's motion to

27   dismiss Plaintiff's negligence claim (Claim Six) is GRANTED with leave to amend.

28   ///

1

        *b)*     *Economic Loss Rule*

2        Wildpack argues Plaintiff's negligence claim is a veiled breach of contract claim and

3 therefore it is barred by the economic loss rule. (ECF No. 31 at 17–18.) In opposition, Plaintiff

4 maintains the economic loss rule does not bar its tort recovery of economic damages because

5 Plaintiff also properly alleges property damages to its products. (ECF No. 42 at 7–8.) Plaintiff

6 also notes Wildpack simultaneously argues Plaintiff is barred from a negligence claim based on

7 the economic loss rule but also contends no contract exists between the two entities. (*Id.* at 6.) In

8 reply, Wildpack asserts property damage is not plead anywhere in the SAC and Plaintiff fails to

9 allege how the leaking and/or defectively manufactured products resulted in cognizable property

10 damage. (ECF No. 47 at 3, 7.) Instead, Wildpack argues Plaintiff's claim that the leaking cans

11 resulted in loss of product and associated costs falls within the scope of economic loss. (*Id.* at 3–

12 4, 7.)

13        The economic loss rule is the principle that in a tort action, "a plaintiff generally cannot

14 recover for financial harm that results from injury to the person or property of another."

15 *Economic Loss Rule*, Black's Law Dictionary (12th ed. 2024). The economic loss rule "requires

16 a purchaser to recover in contract for purely economic loss due to disappointed expectations,

17 unless he can demonstrate harm above and beyond a broken contractual promise." *Robinson*

18 *Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004). Thus, the rule has been

19 generally applied to bar general negligence claims. *Id.* at 989 (citing *Aas v. Superior Court*, 24

20 Cal. 4th 627, 640 (2000), *superseded by statute on other grounds as stated in Southern California*

21 *Gas Leak Cases*, 7 Cal. 5th 391 (2019); *Seely v. White Motor Co.*, 63 Cal. 2d 9 (1965)); *see also*

22 *Sheen v. Wells Fargo Bank, N.A.*, 12 Cal. 5th 905, 923 (2022) (noting that, while not all tort

23 claims are barred by the economic loss rule, "such claims are barred when they arise from — or

24 are not independent of — the parties' underlying contracts"). Put another way, the economic loss

25 rule provides that "[i]n general, there is no recovery in tort for *negligently* inflicted 'purely

26 economic losses,' meaning financial harm unaccompanied by physical or property damage."

27 *Rattagan v. Uber Techs., Inc.*, 17 Cal. 5th 1, 20 (2024) (emphasis in original) (quoting *Sheen*, 12

28 Cal. 5th at 922); *see also Seely*, 63 Cal. 2d at 18 (finding tort recovery unavailable where a buyer

1  sued in contract alleging a manufacturer breached an express contractual warranty of fitness by

2  selling a defective truck but "the defect did not cause any personal injury or damage to property

3  other than to the truck itself"); *Aas*, 24 Cal. 4th at 640 (applying economic loss rule "to bar

4  homeowner claims in tort for diminution of value due to multiple construction defects that did not

5  otherwise cause physical injury or property damage").

6       Here, despite terming the issue as "property damage," the Court finds Plaintiff fails to

7  adequately explain how the leaking cans resulted in physical or property damage beyond the cans

8  themselves (and the associated damaged promotional stickers, cans, wraps, and commercial

9  packaging). It appears Plaintiff cannot demonstrate "harm above and beyond a broken

10  contractual promise" — namely, to manufacture the cans adequately for sale. *See Robinson*

11  *Helicopter*, 34 Cal. 4th at 988. Further, Plaintiff fails to explain how the nature of its relationship

12  to Wildpack or the loss of product and associated costs fits into an exception that would allow

13  Plaintiff to recover for expected economic loss through a claim for negligent performance of a

14  contract. Although Plaintiff cites cases for the proposition that property damage does not fall

15  under the scope of the economic loss rule, Plaintiff fails to explain how that rule could apply to

16  the damaged cans at issue here. (ECF No. 42 at 7–8 (citing *Stearman v. Centex Homes*, 78 Cal.

17  App. 4th 611, 615, 617, 622–23 (2000) (finding the "damage plaintiffs sustained to their home is

18  physical injury falling outside the parameters of economic loss," where plaintiffs' homes had a

19  defective foundation that resulted in cracked walls, ceilings, and countertops); *N. Am. Chem. Co.*

20  *v. Superior Ct.*, 59 Cal. App. 4th 764, 777, 787 (1997) (finding chemical manufacturer's

21  negligence claim for contaminated chemicals packaged and shipped by carrier stated sufficient

22  facts "demonstrating the existence of a special relationship defined and required by *J'Aire* [*Corp.*

23  *v. Gregory*, 24 Cal. 3d 799 (1979)] so as to justify the recovery of economic losses which it

24  claims resulted from Harbor Pac's negligent acts")).).

25       Ultimately, because Plaintiff fails to adequately allege physical or property damage

26  beyond the damage to the cans at issue (and the Court has already granted Wildpack's motion to

27  dismiss this claim for failure to adequately allege a claim), Wildpack's motion to dismiss

28  Plaintiff's negligence claim (Claim Six) is GRANTED with leave to amend.

1               *ii.*        *CalNutri's Argument*

2      As previously stated, the economic loss rule "requires a purchaser to recover in contract

3 for purely economic loss due to disappointed expectations, unless he can demonstrate harm above

4 and beyond a broken contractual promise." *Robinson Helicopter*, 34 Cal. 4th at 988.

5      CalNutri argues the economic loss rule bars Plaintiff's negligence and negligent

6 misrepresentation claims because these claims "merely repackage obligations that are contractual

7 and properly addressed by the breach of contract claim." (ECF No. 33-1 at 11.) CalNutri

8 maintains any alleged tortious conduct and representations were made pursuant to a purely

9 contractual duty and no alleged wrongful act falls under an exception. (*Id.*) In opposition,

10 Plaintiff asserts the SAC references physical property damage, which is an exception to the

11 economic loss rule. (ECF No. 43 at 6.) Plaintiff further asserts the SAC alleges leaking cans,

12 damaged promotional stickers, cans, wraps, and commercial packaging, that CalNutri managed

13 this project, and that Plaintiff asked CalNutri to add inspection of this inventory to labor tasks for

14 the repack project. (*Id.*) In reply, CalNutri contends referencing physical property damage,

15 without more, does not fulfill the exception to the economic loss rule. (ECF No. 48 at 6.)

16 CalNutri notes that the contract at issue was to assist in the canning of beverages and the failure

17 of those cans is clearly a possible outcome of the contract. (*Id.*)

18      Here, for the same reasons set forth above, the Court finds Plaintiff fails to adequately

19 explain how the leaking cans resulted in physical or property damage beyond the cans themselves

20 (and the associated damaged promotional stickers, cans, wraps, and commercial packaging). It

21 appears Plaintiff cannot demonstrate "harm above and beyond a broken contractual promise" —

22 namely, to manufacture the cans adequately for sale. *See Robinson Helicopter Co.*, 34 Cal. 4th at

23 988. Accordingly, CalNutri's motion to dismiss Plaintiff's negligence claim (Claim Five) is

24 GRANTED with leave to amend.

25             *iii.*        *Common Collabs's Argument*

26      Common Collabs argues Plaintiff fails to state a negligence claim and the negligence

27 claim is barred by the economic loss rule. (ECF No. 49 at 5–6.) The Court will address each

28 issue in turn.

<em>a)</em>    <em>Sufficiency of the Allegations</em>

Common Collabs argues Plaintiff's allegations fail to establish a legal duty of care or breach of that duty.  (*Id.* at 5.)  Common Collabs further argues Plaintiff fails to allege Common Collabs's purported breach proximately caused Plaintiff's damages.  (*Id.* at 5–6.)  In opposition, Plaintiff asserts it "sufficiently states a negligence claim" and appears to argue Common Collabs had a duty "to ensure that its facility is safe for manufacturing products" and breached that duty when "Plaintiff began to receive consumer complaints and photos indicating mold growth and a contamination problem."  (ECF No. 50 at 5, 7–8.)

As previously described, to state a negligence claim, a plaintiff must allege: (1) the existence of a duty of care; (2) breach of that duty; (3) causation; and (4) damages.  *Merrill*, 26 Cal. 4th at 500.  Whether a duty of care exists is a question of law to be determined on a case-by-case basis.  *Lueras*, 221 Cal. App. 4th at 62.

Here, Plaintiff cites to cases holding that a manufacturer of a dangerous product has a duty of reasonable care to conduct inspections and tests during the course of manufacturing.  (ECF No. 50 at 6; ECF No. 42 at 6–7.)  As the Court concluded above, these cases do not stand for the proposition that a manufacturer owes a duty of reasonable care to a company that contracts with that manufacturer to produce the product at issue.  The Court therefore finds persuasive Defendant's argument that "Plaintiff's allegations fail to establish any legal duty of care[.]"  (ECF No. 31 at 16.)  Because Plaintiff cannot establish the existence of a duty of care, the Court finds Plaintiff fails to state a negligence claim.

The Court cannot determine at this juncture "that the pleading could not possibly be cured by the allegation of other facts.'"  *Lopez*, 203 F.3d at 1130.  Accordingly, Common Collabs's motion to dismiss Plaintiff's negligence claim (Claim Seven) is GRANTED with leave to amend.

<em>b)</em>    <em>Economic Loss Rule</em>

Common Collabs argues Plaintiff's negligence claim is barred by the economic loss rule, as Plaintiff's allegations "amount to no more than an alleged breach of a non-existent contract."  (ECF No. 49 at 6–7.)  In opposition, Plaintiff asserts it "sufficiently states a negligence claim" and generally describes the economic loss rule, but does not explain how the case law cited

1   applies to the facts of this case.  (ECF No. 50 at 5–8.)  The Court can construe no argument made

2   in opposition to Common Collabs's economic loss rule argument.[5]

3       Here, Plaintiff makes no substantive argument or allegations in the SAC regarding

4   whether there has been "harm above and beyond a broken contractual promise" to establish an

5   exception to the economic loss rule.  *Robinson Helicopter*, 34 Cal. 4th at 988; (*see also* ECF No.

6   29).  Nor does Plaintiff make any substantive argument that it has suffered physical or property

7   damage.  *See Rattagan*, 17 Cal. 5th at 20.

8       Ordinarily, the Court construes Plaintiff's failure to oppose a defendant's argument in a

9   motion to dismiss as a concession or abandonment of the claim.  *See Crandall v. Teamsters Loc.*

10  *No. 150*, No. 2:23-CV-03043-KJM-CSK, 2024 WL 3889916, at *5 (E.D. Cal. Aug. 20, 2024)

11  (finding plaintiff abandoned claims not raised in opposition to defendants' motion to dismiss).

12  However, because Plaintiff appears to make *some* argument in opposition, the Court cannot

13  determine at this juncture "that the pleading could not possibly be cured by the allegation of other

14  facts."  *Lopez*, 203 F.3d at 1130.  Plaintiff is warned that failure to put forth a substantive

15  argument in opposition to a defendant's motion to dismiss in the future will result in granting the

16  motion without leave to amend.  Accordingly, Common Collabs's motion to dismiss Plaintiff's

17  negligence claim (Claim Seven) is GRANTED with leave to amend.

18              D.     Intentional Misrepresentation (Claims Eight, Thirteen)

19      Under California law, the elements of intentional misrepresentation are: "(1)

20  misrepresentation; (2) knowledge of falsity; (3) intent to defraud, i.e., to induce reliance; (4)

21  justifiable reliance; and (5) resulting damage."  *Helo v. Bank of Am. Servicing Co.*, No. 1:14-cv-

22  01522-LJO, 2015 WL 4673890, at *3 (E.D. Cal. Aug. 5, 2015) (internal quotations omitted).

23  Federal courts apply state law to determine whether the elements of fraud have been pleaded

24  adequately to state a cause of action, but Rule 9(b) requires that the circumstances establishing

25  fraud must be stated with sufficient particularity.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097,

26  ───────────────

27  [5]     In its negligence section, after Plaintiff presents general case law on the economic loss rule, Plaintiff switches to discussing how the economic loss rule applies specifically in the context of negligent misrepresentation claims.  (ECF No. 50 at 8.)  The Court addresses this argument and the cases cited by Plaintiff below.

28

1    1103 (9th Cir. 2003). Specifically, Rule 9(b) requires that "[i]n alleging fraud or mistake, a party

2    must state with particularity the circumstances constituting fraud or mistake. Malice, intent,

3    knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P.

4    9(b). The allegations underlying a fraud claim must be "specific enough to give defendants

5    notice of the particular misconduct . . . so that they can defend against the charge." *Vess*, 317

6    F.3d at 1106 (internal quotation marks omitted). "Averments of fraud must be accompanied by

7    'the who, what, when, where, and how' of the misconduct charged." *Id.* (citing *Cooper v. Pickett*,

8    137 F.3d 616, 627 (9th Cir. 1997)). "[A] plaintiff must set forth more than the neutral facts

9    necessary to identify the transaction. The plaintiff must set forth what is false or misleading

10   about a statement, and why it is false." *Id.* (internal citation omitted). Claims for intentional

11   representation are fraud-based claims that must meet the heightened pleading standards of Rule

12   9(b). *Avakian v. Wells Fargo Bank, N.A.*, 827 F. App'x 765, 766 (9th Cir. 2020).

13                          *i.      Wildpack's Argument*

14            Wildpack argues Plaintiff fails to detail any precise statements that were allegedly made,

15   who made them, or when and where those statements occurred. (ECF No. 31 at 18–19.)

16   Wildpack further argues Plaintiff fails to adequately allege Wildpack knew the statements were

17   false when made, Wildpack had the requisite intent to induce reliance, Plaintiff justifiably relied

18   on the alleged misrepresentations, or that this reliance resulted in damages. (*Id.* at 19.) In

19   opposition, Plaintiff asserts the SAC states with particularity the circumstances constituting the

20   fraud — Wildpack made a representation to Plaintiff that the cans were fit for commercial release

21   and Wildpack intended to induce reliance on this misrepresentation by releasing the product to

22   Plaintiff from its warehouse. (ECF No. 42 at 8–9.) Plaintiff further asserts by accepting the

23   product, Plaintiff actually and justifiably relied on the representation, which caused damage. (*Id.*

24   at 9.) In reply, Wildpack contends Plaintiff's claim that Wildpack intended to induce reliance on

25   a misrepresentation, without actually describing the representation, is insufficient. (ECF No. 47

26   at 8.) Wildpack further contends Plaintiff's assertion that Wildpack released the product without

27   inspection does not amount to a representation. (*Id.* at 8–9.)

28   ///

1    With respect to the first and second elements of intentional misrepresentation, Plaintiff

2    alleges that in January 2023, "Wildpack represented to CalNutri, who communicated to Plaintiff,

3    that cans produced at the Wildpack facility were fit for commercial release" and "Wildpack knew

4    that the representation was false when it made it, or made the representation recklessly and

5    without regard for its truth, since all of the cans did not contain lot code stamps, which are

6    required for beverages manufactured in the U[.]S." (ECF No. 29 at 29.) With respect to the third

7    element, Plaintiff alleges "Wildpack intended that CalNutri and Plaintiff rely on the

8    representation." (*Id.*) With respect to the fourth and fifth elements, Plaintiff alleges its "reliance

9    on Wildpack's representation was a substantial factor" in causing the harm and Plaintiff has been

10   "harmed" and "damaged in an amount greater than $75,000." (*Id.*) Although Plaintiff provides a

11   general date of January 2023, it still nevertheless fails to plead the misrepresentation with the

12   particularity Rule 9(b) requires. The foregoing allegations fail to adequately allege the "'the who,

13   what, when, where, and how' of the misconduct charged." *Vess*, 317 F.3d at 1106.

14   The Court cannot determine at this juncture "that the pleading could not possibly be cured

15   by the allegation of other facts." *Lopez*, 203 F.3d at 1130. Accordingly, Wildpack's motion to

16   dismiss Plaintiff's intentional misrepresentation claim (Claim Eight) is GRANTED with leave to

17   amend.

18              *ii.     Common Collabs's Argument*

19   Common Collabs argues the SAC fails to allege any specific misrepresentation with the

20   particularity required by Rule 9(b), as it merely alleges Common Collabs orally represented that it

21   would file an insurance claim on behalf of Plaintiff but does not detail any precise statements that

22   were allegedly made, who made them, or when and where these statements occurred. (ECF No.

23   49 at 8.) Common Collabs further argues the SAC fails to adequately allege it had the requisite

24   intent to induce reliance or that Plaintiff justifiably relied on the alleged misrepresentations or that

25   the reliance resulted in damages. (*Id.* at 8–9.)

26   In opposition, Plaintiff cites to allegations in the SAC that Common Collabs stated a claim

27   would be submitted on Plaintiff's behalf and intended Plaintiff to rely on this statement to obtain

28   additional purchase order protection and to get Plaintiff to hire and pay for an attorney to file a

1  claim.  (ECF No. 50 at 9 (citing ECF No. 29 ¶¶ 28, 42, 43).)  Plaintiff asserts Richard Kim

2  ("Kim") made these statements with the knowledge a claim could not actually be filed on

3  Plaintiff's behalf, Plaintiff relied on these statements and made payments, and Kim later refused

4  to proceed with filing on Plaintiff's behalf and blocked Plaintiff from contacting the insurer.  (*Id.*

5  (citing ECF No. 29 ¶ 28).)

6        Here, with respect to the first element of intentional misrepresentation, Plaintiff alleges

7  Common Collabs represented to Plaintiff in April 2023 that it would file an insurance claim on

8  Plaintiff's behalf.  (ECF No. 29 at 34.)  Despite Plaintiff's citation to paragraph 28, this paragraph

9  does not contain information on the precise statements that were made, who at Common Collabs

10  told Plaintiff it would file the insurance claim, or when and where the statements were made.

11  (ECF No. 29 at 12.)   Nor do paragraphs 42 and 43 contain information on this alleged

12  misrepresentation.  (*Id.* at 19.)  Those paragraphs primarily detail Common Collabs's alleged

13  refusal to allow Plaintiff to discuss the issue with the insurer and Plaintiff learning it was not

14  named as additionally insured.  (*Id.*)  The foregoing allegations fail to adequately set forth the

15  "'the who, what, when, where, and how' of the misconduct charged."  *Vess*, 317 F.3d at 1106.

16        The Court cannot determine at this juncture "that the pleading could not possibly be cured

17  by the allegation of other facts."  *Lopez*, 203 F.3d at 1130.  Accordingly, Common Collabs's

18  motion to dismiss Plaintiff's intentional misrepresentation claim (Claim Thirteen) is GRANTED

19  with leave to amend.

20          E.      Negligent Misrepresentation (Claims Nine, Ten, Eleven)

21        Under California law, the elements of negligent misrepresentation are the same as

22  intentional misrepresentation — minus the element of intent to induce reliance.  *Saldate v.*

23  *Wilshire Credit Corp.*, 268 F.R.D. 87, 101 (E.D. Cal. 2010) (citing *Cadlo v. Owens-Illinois, Inc.*,

24  125 Cal. App. 4th 513, 519 (2004)).  A negligent misrepresentation claim must also comply with

25  the heightened pleading standards of Rule 9(b).  *Id.*

26          i.      *Wildpack's Argument*

27        Wildpack largely makes the same arguments with respect to Plaintiff's negligent

28  misrepresentation claim as it does with respect to Plaintiff's intentional misrepresentation claim.

1    (ECF No. 31 at 20–22.)  Wildpack argues Plaintiff fails to allege what material facts Wildpack

2    misrepresented, that Wildpack lacked reasonable grounds for believing it to be true, that Plaintiff

3    justifiably relied on the misrepresentation, or that the reliance caused Plaintiff harm.  (*Id.* at 21.)

4    Wildpack notes paragraphs 17 and 18 of the SAC potentially include alleged statements made by

5    Wildpack personnel, but even if true the statements do not support a claim for negligent

6    misrepresentation.  (*Id.* at 21–22.)  In opposition, Plaintiff maintains Wildpack lacked reasonable

7    grounds for believing the product was fit for commercial release since it could have easily

8    inspected the cans to ensure the lot codes were on the product.[6]  (ECF No. 42 at 9.)

9           Here, because the elements for a negligent misrepresentation claim are the same as the

10   elements for an intentional misrepresentation claim, minus the element to induce reliance, the

11   Court finds Plaintiff similarly fails to adequately allege a claim for negligent misrepresentation.

12   Plaintiff still fails to plead the misrepresentation at issue with the particularity Rule 9(b) requires.

13   Further, Wildpack cites to *Crystal Springs Upland School v. FieldTurf USA, Inc.*, in which the

14   court held "that a negligent misrepresentation claim paralleling a contract claim that prays only

15   for economic damages will be barred by the economic loss rule unless the plaintiff alleges both

16   that the defendant made an affirmative misrepresentation, and that the defendant's

17   misrepresentation exposed the plaintiff to independent personal liability."  219 F. Supp. 3d 962,

18   970 (N.D. Cal. 2016) (citing *Robinson Helicopter*, 34 Cal. 4th at 933).  Plaintiff does not address

19   this argument but instead asserts the economic loss rule does not apply because Plaintiff pleads

20   property damage.  (ECF No. 42 at 9.)  Thus, in addition to failing to state a claim on its face,

21   Plaintiff's negligent misrepresentation claim against Wildpack fails to state sufficient facts to

22   qualify for an exception to the economic loss rule.

23          The Court cannot determine at this juncture "that the pleading could not possibly be cured

24   by the allegation of other facts.'"  *Lopez*, 203 F.3d at 1130.  Accordingly, Wildpack's motion to

25   dismiss Plaintiff's negligent misrepresentation claim (Claim Nine) is GRANTED with leave to

26

27   _____
     [6]     The Court declines to address Plaintiff's assertion that it can amend this cause of action to
28   re-allege the facts from the general allegations because Plaintiff already states in this claim that it
     "re-alleges and incorporates by reference all previous paragraphs."  (ECF No. 29 at 30.)

1    amend.

2                            *ii.    CalNutri's Argument*

3         CalNutri argues Plaintiff fails to state a negligent misrepresentation claim under Rule 9(b)

4    and the negligent misrepresentation claim is barred by the economic loss rule.  (ECF No. 33-1 at

5    9–17.)  The Court will address each issue in turn.

6                            *a)    Sufficiency of the Allegations*

7         CalNutri argues Plaintiff fails to plead "the who, what, when, where, and how" of this

8    claim and it is difficult to discern from the allegations what CalNutri negligently misrepresented

9    to Plaintiff.  (ECF No. 33-1 at 13–15.)  CalNutri further argues, to the extent Plaintiff's claim is

10   premised on the failure to disclose the true cause of the alleged "squishy cans," the SAC does not

11   state who from CalNutri knew this fact, or when they knew it, nor does the SAC allege any of the

12   representations made were untrue or intended to mislead Plaintiff.  (*Id.* at 15–16.)

13        In opposition, Plaintiff asserts Brandon Martin of CalNutri made two representations in a

14   November 22, 2022 email: (1) CalNutri had finalized the review of the agreement with Thomas

15   Walker ("Walker") of Wildpack; and (2) Walker assured that if anything catastrophic happened,

16   Wildpack would stand by its mistake.  (ECF No. 43 at 7 (citing ECF No. 29 ¶ 11).)  Plaintiff

17   contends paragraph 48 of the SAC alleges that CalNutri was to ensure Plaintiff would be

18   protected under a third party's insurance policy when entering into the manufacturing agreement

19   and to ensure Plaintiff's rights were protected.  (*Id.* at 7.)  Plaintiff further contends the terms in

20   the Services Agreement and Brandon Martin's representation that Wildpack would stand by its

21   agreement caused Plaintiff to rely on those statements to its detriment and pay for the Wildpack

22   production.  (*Id.*)

23        As previously discussed, under California law, the elements of negligent

24   misrepresentation are: (1) misrepresentation; (2) knowledge of falsity; (3) justifiable reliance; and

25   (4) resulting damage.  *Saldate*, 268 F.R.D. at 101.

26        Here, with respect to the first element, Plaintiff alleges that on November 22, 2022,

27   "Brandon Martin of CalNutri stated via email that CalNutri had finalized the review of the

28   agreement with Wildpack's co-founder, Thomas Walker, who assured that if anything

1    catastrophic happened on the opening order trial run, Wildpack would stand by their mistake."

2    (ECF No. 29 at 5.)  Plaintiff states the representations at issue are that CalNutri "would ensure

3    that Plaintiff would be protected under the insurance policies for Wildpack, and that Wildpack

4    would remedy any manufacturing issues."  (*Id.* at 31.)  With respect to the second element,

5    however, Plaintiff does not allege in the SAC that CalNutri knew Brandon Martin's

6    representations to Plaintiff were false or untrue.  Plaintiff only alleges CalNutri informed Plaintiff

7    in January 2023 "that the product Wildpack deemed fit for commercial release was in fact fit for

8    commercial release when it did not have lot codes stamped on all cans, which is a requirement to

9    sell beverages under the FDA."  (*Id.*)  Plaintiff then alleges in a conclusory manner that CalNutri

10   intended Plaintiff to rely on the representations and Plaintiff was harmed by the false

11   representations.  (*Id.*)  Plaintiff does not allege Brandon Martin or anyone else at CalNutri had

12   knowledge that Martin's representations to Plaintiff were false.  Plaintiff therefore fails to

13   adequately plead a negligent misrepresentation claim.

14        The Court cannot determine at this juncture "that the pleading could not possibly be cured

15   by the allegation of other facts."  *Lopez*, 203 F.3d at 1130.  Accordingly, CalNutri's motion to

16   dismiss Plaintiff's negligent misrepresentation claim (Claim Ten) is GRANTED with leave to

17   amend.

18                          *b)*    *Economic Loss Rule*

19        CalNutri also argues, for the same reasons Plaintiff's negligence claim is barred pursuant

20   to the economic loss rule, Plaintiff's negligent misrepresentation claim is similarly barred and

21   should be dismissed.  (ECF No. 33-1 at 9–12.)  In opposition, Plaintiff raises the exact same

22   arguments with respect to its negligence and negligent misrepresentation claims.  (ECF No. 43 at

23   5–6.)

24        Several district courts in the Ninth Circuit have concluded that the economic loss rule bars

25   a plaintiff from recovering in tort — pursuant to a negligent misrepresentation claim — for

26   economic damages that flow from an alleged breach of contract.  *See Chaffey Joint Union High*

27   *Sch. Dist. v. FieldTurf USA, Inc.*, No. EDCV 16-204-JGB-DTBx, 2016 WL 11499348, at *3

28   (Apr. 28, 2016) (citing cases) ("[N]umerous courts since *Robinson* have held that the economic

1   loss rule bars claims for negligent misrepresentation where the alleged misrepresentations were

2   made in the course of forming the contract.").  However, other district courts have reached

3   different conclusions, denying motions to dismiss where a plaintiff's negligent misrepresentation

4   claim sounded "more in deceit/fraud than it does in negligence."  *Bret Harte Union High Sch.*

5   *Dist. v. FieldTurf, USA, Inc.*, No. 1:16-cv-00371-DAD-SMS, 2016 WL 3519294, at * (E.D. Cal.

6   June 27, 2016) (citing cases) (noting two unpublished Ninth Circuit cases suggest negligent

7   misrepresentation claims are not barred by the economic loss rule and district courts in California

8   have reached various conclusions).

9         Here, as set forth above, Plaintiff fails to adequately plead a negligent misrepresentation

10   claim against CalNutri.  The Court therefore cannot determine whether such a claim alleges

11   economic damages that flow from an alleged breach of contract or whether the allegations sound

12   more in deceit/fraud.  Accordingly, the Court declines to address CalNutri's arguments regarding

13   the economic loss rule with respect to Plaintiff's negligent misrepresentation claim at this

14   juncture.

15                    *iii.*        *Common Collabs's Argument*

16         Common Collabs argues Plaintiff's negligent misrepresentation claim is barred by the

17   economic loss rule.  (ECF No. 49 at 7.)  Common Collabs further argues Plaintiff does not allege

18   Common Collabs made any affirmative misrepresentations and does not allege any exposure to

19   independent personal liability.  (*Id.* at 7–8.)  In opposition, Plaintiff argues the economic loss rule

20   Common Collabs cites in *UMG Recordings, Inc. v. Global Eagle Entertainment, Inc.*, 117 F.

21   Supp. 3d 1092, 1105 (C.D. Cal. 2015) does not apply because Common Collabs made

22   misrepresentations that caused Plaintiff independent third-party liability.[7]  (ECF No. 50 at 8.)

23         As an initial matter, the Court finds it difficult to make sense of Plaintiff's argument.

24   Plaintiff states the economic loss rule articulated in *UMG Recordings, Inc.* does not apply, but

25   *UMG Recordings, Inc.* simply states "[c]ourts have also applied the economic loss rule to bar

26

27   [7]       Plaintiff also generally argues the claim is sufficiently pleaded (ECF No. 50 at 8–9), but
     the Court does not address these arguments because Common Collabs does not challenge the
28   sufficiency of the pleading with respect to this claim.

1    negligent misrepresentation claims where the purportedly negligent conduct is conceptually

2    indistinct from a contract breach." 117 F. Supp. 3d at 1103. In that case, the district court

3    concluded counterclaimants' fraud and negligent misrepresentation claims were based entirely on

4    an alleged oral agreement and the claims were barred by the economic loss rule (unless

5    counterclaimants identified an independent duty that was violated). *Id.* at 1104. The case did not

6    discuss any misrepresentations that caused plaintiffs third-party liability in the context of the

7    economic loss rule.

8        However, Common Collabs does cite to *Crystal Springs*, in which the court held "that a

9    negligent misrepresentation claim paralleling a contract claim that prays only for economic

10   damages will be barred by the economic loss rule unless the plaintiff alleges both that the

11   defendant made an affirmative misrepresentation, and that the defendant's misrepresentation

12   exposed the plaintiff to independent personal liability." 219 F. Supp. 3d at 970 (citing *Robinson*

13   *Helicopter*, 34 Cal. 4th at 933). The court ultimately concluded, however, the economic loss rule

14   barred plaintiff's negligent misrepresentation claim because plaintiff alleged defendants made

15   affirmative representations about the effectiveness of their product (a turf field) but did not allege

16   reliance on those representations led to independent personal liability. *Id.*

17       Here, Plaintiff alleges Common Collabs made several false representations, including

18   "that the contamination at Common Collabs was a result of Plaintiff's ingredients," without

19   "proper identification testing by an outside third party, despite requests for identification testing,

20   including retention samples, by Plaintiff[]." (ECF No. 29 at 32.) Plaintiff further alleges

21   "Common Collabs kept testing for mold count without identification to falsely create a narrative

22   that mold was present with Plaintiff's ingredients while failing to test its facility, air, equipment,

23   water, forklifts, pallets, and other areas known to harbor HRM ascospores confirmed to have

24   contaminated Plaintiff's products during manufacturing." (*Id.*) On June 9, 2023, Plaintiff

25   allegedly began to receive consumer complaints and photos indicating mold growth and a

26   contamination problem, believed to be from the manufacturing at Common Collabs. (*Id.* at 11.)

27   Plaintiff alleges, as a result of this contamination issue, it was forced to stop sales despite its

28   financial obligations, contact customers to discard the defective product, refund orders, intercept

1    product sent to a children's event in Florida, and pull product from distributors and buyers.  (*Id.*)

2    Plaintiff also lists its monetary damages and what it owes to which entities.  (*Id.* at 20–21.)  Yet

3    despite these numerous financial issues Plaintiff allegedly encountered, Plaintiff does not allege

4    this misrepresentation "opened [Plaintiff] up to independent personal liability."  *Crystal Springs*,

5    219 F. Supp. 3d at 970.

6         The Court cannot determine at this juncture "that the pleading could not possibly be cured

7    by the allegation of other facts.'"  *Lopez*, 203 F.3d at 1130.  Accordingly, Common Collabs's

8    motion to dismiss Plaintiff's negligent misrepresentation claim (Claim Eleven) is GRANTED

9    with leave to amend.

10                    F.    Punitive Damages

11        A plaintiff may only recover punitive damages where clear and convincing evidence

12   shows that the defendant has been guilty of oppression, fraud, or malice.  Cal. Civ. Code § 3294.

13   The Court has authority to dismiss a prayer for punitive damages under Rule 12(b)(6) if a plaintiff

14   does not sufficiently allege facts to support a cognizable legal theory demonstrating the grounds

15   for punitive damages.  *Mendonsa v. Land O'Lakes, Inc.*, No. 1:22-cv-00731-NODJ-BAM, 2024

16   WL 199680, at *5 (E.D. Cal. Jan. 17, 2024) (citing *Guarantee Real Estate v. Hanover Ins. Co.*,

17   No. 1:14-cv-00860-TLN-MJS, 2014 WL 5817536, at *5 (E.D. Cal. Nov. 7, 2014)).

18        Wildpack and Common Collabs argue the SAC improperly seeks punitive damages in its

19   Prayer for Relief in connection with the intentional and negligent misrepresentation claims.  (ECF

20   No. 31 at 23; ECF No. 49 at 9.)  CalNutri similarly argues punitive damages are not available for

21   negligent misrepresentation or any other claim pleaded in the Complaint.  (ECF No. 33-1 at 18.)

22   Defendants contend punitive damages are not available for negligent misrepresentation and the

23   SAC lacks specific factual allegations demonstrating it acted with "oppression, fraud, or malice."

24   (ECF No. 31 at 23; ECF No. 33-1 at 18; ECF No. 49 at 9.)  In opposition, Plaintiff requests the

25   Court refrain from striking the punitive damages if the Court grants Plaintiff leave to amend its

26   misrepresentation claims.  (ECF No. 42 at 10; ECF No. 43 at 8; ECF No. 50 at 10.)  In reply,

27   Wildpack and CalNutri note Plaintiff's opposition fails to address how the punitive damages

28   request is warranted or supported by the facts in the SAC and fails to identify any additional facts

1    or information that could be added by amendment.  (ECF No. 47 at 9–10; ECF No. 48 at 9.)

2           As an initial matter, Defendants are correct that California law provides that punitive

3    damages are not recoverable in fraud actions involving negligent misrepresentations.  *All. Mortg.*

4    *Co. v. Rothwell*, 10 Cal. 4th 1226, 1241 (1995).  With respect to Plaintiff's intentional

5    representation claims, the Court above found Plaintiff fails to state these claims with the

6    particularity Rule 9(b) requires and granted Wildpack and Common Collabs's motions to dismiss.

7    Punitive damages are therefore unavailable and subject to a Rule 12(b)(6) dismissal.  *See*

8    *Mendonsa*, 2024 WL 199680, at *5 (finding similarly).  The Court further observes that CalNutri

9    fails to make any substantive argument with respect to punitive damages on the remainder of

10   Plaintiff's claims and therefore declines to address them.

11          Accordingly, Defendants' motions to dismiss Plaintiff's prayer for punitive damages is

12   GRANTED.  The Court grants Plaintiff leave to amend with respect to its intentional

13   misrepresentation claim only.

14          G.    Attorney's Fees and Costs

15          CalNutri argues under California law, to obtain an award of attorney's fees and costs

16   pursuant to a contract, a complaint must show it is available.  (ECF No. 33-1 at 17.)  CalNutri

17   contends the CalNutri Agreement does not have an attorney's fee provision nor does it allow for

18   costs to be awarded upon any litigation.  (*Id.*)  In opposition, Plaintiff asserts paragraph 6 of

19   Exhibit 1 to the SAC contains a provision that lists indemnification, defense, and protection of

20   CalNutri's costs and legal fees and further asserts that such a provision should be reciprocal as to

21   Plaintiff pursuant to California Civil Procedure Code § 1717(a).  (ECF No. 43 at 8.)  In reply,

22   CalNutri notes Plaintiff admits the clause it cites is an indemnification clause, not an attorney's

23   fees clause.  CalNutri argues the inclusion of attorney's fees as an item of loss in a third-party

24   claim indemnity provision does not constitute a provision for the award of attorney's fees in a

25   contract action as required to trigger operation of California Civil Code § 1717(a).  (ECF No. 48

26   at 8 (citing *Myers Bldg. Indus., Ltd. v. Interface Tech., Inc.*, 13 Cal. App. 4th 949, 971–73

27   (1993)).)

28   ///

California Civil Code § 1717 provides a reciprocal right to attorney's fees and costs in an action on a contract where the contract confers a right to attorney's fees and costs to one party but not another. Cal. Civ. Code § 1717(a). Indeed, California courts have found that contractual provisions for indemnity against third-party claims "are not made reciprocal under Civil Code [§] 1717, because they do not provide for an award of attorney's fees incurred in actions to enforce the contract." *Myers Bldg. Indus., Ltd.*, 13 Cal. App. 4th at 962–63.

Here, paragraph 6 of Exhibit 1 to the SAC explicitly states the following: "The Client agrees to indemnify, defend, and protect the Service Provider from and against all lawsuits and costs of every kind pertaining to the Client's business including reasonable legal fees due to any act or failure to act by the Client based upon the Provided Services." (ECF No. 29 at 39.) CalNutri is correct that this is a contractual third-party claims indemnity clause (which Plaintiff indeed concedes). (ECF No. 43 at 8.) Accordingly, this provision is not reciprocal. Plaintiff also does not refute CalNutri's assertion that the CalNutri Agreement does not contain an attorney's fee provision nor does it allow for costs to be awarded upon any litigation. Plaintiff consequently concedes this argument. *See Crandall v. Teamsters Loc. No. 150*, No. 2:23-CV-03043-KJM-CSK, 2024 WL 3889916, at *5 (E.D. Cal. Aug. 20, 2024) (finding plaintiff abandoned claims not raised in opposition to defendants' motion to dismiss).

Accordingly, CalNutri's motion to dismiss Plaintiff's prayer for an award of attorney's fees and costs is GRANTED without leave to amend with respect to Plaintiff's breach of contract claim against CalNutri only.

## IV.    CONCLUSION

For the foregoing reasons, Wildpack's Motion to Dismiss (ECF No. 31) is GRANTED, CalNutri's Motion to Dismiss (ECF No. 33) is GRANTED, and Common Collabs's Motion to Dismiss (ECF No. 49) is GRANTED in part and DENIED in part as follows:

1. Wildpack's motion to dismiss is GRANTED:

    a.    Wildpack's motion to dismiss Plaintiff's breach of contract claim (Claim Four), negligence claim (Claim Six), intentional misrepresentation claim (Claim Eight), and negligent misrepresentation claim (Claim Nine) is GRANTED with leave to

1  amend; and

2  b.  Wildpack's motion to dismiss Plaintiff's prayer for punitive damages is

3  GRANTED and leave to amend is granted only with respect to Plaintiff's

4  intentional misrepresentation claim; and

5  2.  CalNutri's motion to dismiss is GRANTED:

6  a.  CalNutri's motion to dismiss Plaintiff's breach of fiduciary duty claims (Claims

7  One and Twelve), negligence claim (Claim Five), negligent misrepresentation

8  claim (Claim Ten);

9  b.  CalNutri's motion to dismiss Plaintiff's prayer for punitive damages is GRANTED

10  without leave to amend; and

11  c.  CalNutri's motion to dismiss Plaintiff's prayer for attorney's fees and costs is

12  GRANTED without leave to amend with respect to Plaintiff's breach of contract

13  claim against CalNutri only; and

14  3.  Common Collabs's motion to dismiss is GRANTED in part and DENIED in part:

15  •  Common Collabs's motion to dismiss Plaintiff's breach of contract claim (Claim

16  Three) is DENIED;

17  •  Common Collabs's motion to dismiss Plaintiff's negligence claim (Claim Seven),

18  negligent misrepresentation claim (Claim Eleven), and intentional

19  misrepresentation claim (Claim Thirteen) is GRANTED with leave to amend; and

20  •  Common Collabs's motion to dismiss Plaintiff's prayer for punitive damages is

21  GRANTED and leave to amend is granted only with respect to Plaintiff's

22  intentional misrepresentation claim.

23  Plaintiff may file an amended complaint not later than thirty (30) days from the electronic

24  filing date of this Order.  Defendants shall file a responsive pleading not later than twenty-one

25  (21) days from the electronic filing date of the amended complaint.  If Plaintiff opts not to file an

26  amended complaint, the case shall proceed on Plaintiff's remaining claims in the action.

27  //

28  //

1          IT IS SO ORDERED.

2     Date: August 21, 2025

3     _____

4     TROY L. NUNLEY
      CHIEF UNITED STATES DISTRICT JUDGE

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28