UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTENT BRANDS, INC.,<br>Plaintiff,<br>v.<br>CALNUTRI, INC., COMMON COLLABS, LLC, and WILDPACK BEVERAGE, INC.,<br>Defendants. | No. 2:24-cv-02499-TLN-CKD<br><br>**ORDER** |

This matter is before the Court on Defendants Wildpack, Inc.'s ("Wildpack"), CalNutri, Inc.'s ("CalNutri"), and Common Collabs, LLC's ("Common Collabs") (collectively, "Defendants") Motions to Dismiss. (ECF Nos. 57, 61, 62.) Plaintiff Intent Brands, Inc. ("Plaintiff") filed oppositions. (ECF Nos. 64, 67, 68.) CalNutri and Common Collabs filed replies. (ECF Nos. 70, 71.) For the reasons set forth below, the motions are GRANTED without leave to amend.

///

///

///

///

## I. Factual and Procedural Background

The instant action arises out of Defendants' alleged failure to disclose a manufacturing problem that caused improper sealing of cans and heat resistant mold spore contamination of Plaintiff's non-alcoholic beverage, Sly. (*See* ECF No. 29.) The Court need not recite the full factual background of this case, as it is set forth in full in its August 22, 2025 Order. (ECF No. 55.)

On September 22, 2025, Plaintiff filed the operative Third Amended Complaint ("TAC"), alleging claims for: breach of fiduciary duty – failure to use reasonable care against CalNutri; breach of contract against CalNutri, Common Collabs, and Wildpack; intentional misrepresentation against Wildpack and Common Collabs; negligent misrepresentation against Wildpack, CalNutri, and Common Collabs; and breach of fiduciary duty – duty of undivided loyalty against CalNutri. (*See* ECF No. 56.) The instant motions to dismiss were filed by Wildpack and Common Collabs on October 6, 2025, and by CalNutri on October 10, 2025. (ECF Nos. 57, 61, 62.)

## II. Standard of Law

A motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Rule 8(a) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court is bound to give the plaintiff the benefit of every reasonable inference drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks*

*Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570.

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In ruling on a motion to dismiss, a court may only consider the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

If a complaint fails to state a plausible claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could

not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

## III. ANALYSIS

Defendants argue Plaintiff fails to state claims for breach of fiduciary duty, breach of contract, intentional misrepresentation, and negligent misrepresentation.[1] (*See* ECF Nos. 62-1, 33-1, 49.) The Court will consider each of Plaintiff's claims in turn and address the specific arguments each Defendant raises.

### A. Breach of Fiduciary Duty (Claims One and Twelve)

To establish a breach of fiduciary claim, a plaintiff must plead: "(1) the existence of a fiduciary duty; (2) a breach of the fiduciary duty; and (3) damage proximately caused by the breach." *Winebarger v. Penn. Higher Ed. Assistance Agency*, 411 F. Supp. 3d 1070, 1091 (C.D. Cal. 2019) (citing *Stanley v. Richmond*, 35 Cal. App. 4th 1070, 1086 (1995)). Whether a fiduciary duty exists is a question of law to be answered by the court. *Id.* (citing *Ky. Fried Chicken of Cal. v. Super. Ct.*, 14 Cal. 4th 814, 819 (1997)).

CalNutri argues there is no fiduciary relationship that was established by agreement or by law. (ECF No. 62-1 at 4.) CalNutri points to the Court's prior Order, which found the alleged client-service provider relationship between Plaintiff and CalNutri does not fall into any of the categories of relationships where the law recognizes a fiduciary duty, and contends the cases cited in the TAC reinforce this conclusion. (*Id.*) In opposition, Plaintiff asserts the TAC's allegations establish a fiduciary relationship under California law, "which recognizes such duties when one party undertakes to act for the benefit of another" or "where one party exerts dominance, trust, or special confidence over another." (ECF No. 64 at 3 (citing *City of Hope Nat'l Med. Ctr. v.*

---

[1] All parties assert Plaintiff's prayer for punitive damages is improper. (ECF No. 57 at 17; ECF No. 62-1 at 9–10; ECF No. 61 at 7.) CalNutri argues the prayer for damages on Plaintiff's negligence claim is improper and Common Collabs argues the negligence claim is legally barred and deficient. (ECF No. 62-1 at 9–10; ECF No. 61 at 7.) CalNutri maintains Plaintiff's prayer for attorney's fees and costs is also improper. (ECF No. 62-1 at 9–10.) Plaintiff does not dispute any of these arguments. (ECF No. 64 at 8; ECF No. 67 at 4, 10; ECF No. 68 at 11.) Accordingly, Plaintiff's negligence claims and prayer for punitive damages and attorney's fees and costs are DISMISSED.

*Genentech, Inc.*, 43 Cal. 4th 375, 386 (2008); *Wolf v. Superior Ct.*, 107 Cal. App. 4th 25, 40 (2003), *as modified on denial of reh'g* (Mar. 20, 2003)).) In reply, CalNutri maintains there is no special circumstance or duty taken on by CalNutri to act as Plaintiff's fiduciary. (ECF No. 70 at 2.)

Here, Plaintiff again fails to state the first element of this claim — the existence of a fiduciary duty. As the California Supreme Court found in *City of Hope National Medical Center*, "no fiduciary relationship" arises from a contract when "[t]here is no indication in the contract that [the defendant] entered into it with the view of acting primarily for the benefit of [the plaintiff]" and there is no "factual basis showing that [the defendant] through its conduct 'knowingly' undertook the obligations of a fiduciary." 43 Cal. 4th at 385–86 (quoting *Comm. On Children's Television, Inc. v. General Foods Corp.*, 35 Cal. 3d 197, 221 (1983), *superseded by statute on other grounds as stated in Branick v. Downey Savings & Loan Ass'n*, 39 Cal. 4th 235 (2006)). In *Wolf*, the California Court of Appeal rejected the plaintiff's contention that a fiduciary relationship existed because he placed "trust and confidence" in the defendant to perform its contractual obligation, as "[e]very contract requires one party to repose an element of trust and confidence in the other to perform." 107 Cal. App. 4th at 31. The court noted this relationship "ordinarily arises where a confidence is reposed by one person in the integrity of the another . . . if he voluntarily accepts or assumes to accept the confidence, can take no advantage from his acts relating to the interest of the other party without the latter's knowledge or consent[.]" *Id.* at 29. The *Wolf* court also listed traditional examples of fiduciary relationships and noted that "[i]nherent in each of these relationships is the duty of undivided loyalty the fiduciary owes to its beneficiary, imposing on the fiduciary obligations far more stringent than those required of ordinary contractors." *Id.* at 30.

Plaintiff alleges the following allegations satisfy the plausibility threshold: "CalNutri controlled Plaintiff's manufacturing and inventory decisions; represented that it would safeguard Plaintiff's interests by including Plaintiff's specifications in agreements with third parties; maintained and withheld communications and documentation with those third parties; and concealed information regarding reimbursement and recall coverage." (ECF No. 64 at 3 (citing

ECF No. 56 ¶¶ 13, 28, 34, 107, 153, 157, 158).) These allegations do not establish a traditional fiduciary relationship. While the Court recognizes the absence of a traditional fiduciary relationship is not dispositive, Plaintiff nevertheless fails to establish from these allegations that CalNutri entered into the contract to "act[] primarily for the benefit of [Plaintiff]," that CalNutri "knowingly undertook the obligations of a fiduciary," or that CalNutri "voluntarily accept[ed] or assume[d] to accept the confidence" of Plaintiff. *See City of Hope Nat'l Med. Ctr.*, 43 Cal. 4th at 385–86; *Wolf*, 107 Cal. App. 4th at 29–30. Rather, Plaintiff alleges only that CalNutri undertook the ordinary "trust and confidence" inherent in all contractual obligations. *Wolf*, 107 Cal. App. 4th at 31.

The Court has already granted Plaintiff leave to amend this claim and Plaintiff is proceeding on its Third Amended Complaint. Therefore, the Court finds "the pleading could not possibly be cured by the allegation of other facts.'" *Lopez*, 203 F.3d at 1130. Accordingly, CalNutri's motion to dismiss Plaintiff's breach of fiduciary duty claims (Claims One and Twelve) is GRANTED without leave to amend.

B. Breach of Contract (Claim Four)

To state a breach of contract claim, a plaintiff must allege: (1) the existence of a contract; (2) plaintiff's performance of the contract or excuse for failure to perform; (3) defendant's breach of the contract; and (4) the resulting damage to plaintiff. *D'Arrigo Bros. of Cal. v. United Farmworkers of Am.*, 224 Cal. App. 4th 790, 800 (2014). "In California . . . it is well established that under some circumstances a third party may bring an action for breach of contract based upon an alleged breach of contract entered into by other parties." *Goonewardene v. ADP, LLC*, 6 Cal. 5th 817, 826–27 (2019). The California Supreme Court explained:

> [A] review of this court's third party beneficiary decisions reveals that our court has carefully examined the express provisions of the contract at issue, as well as all of the relevant circumstances under which the contract was agreed to, in order to determine not only (1) whether the third party would in fact benefit from the contract, but also (2) whether a motivating purpose of the contracting parties was to provide a benefit to the third party, and (3) whether permitting a third party to bring its own breach of contract action against a contracting party is consistent with the objectives of the contract and the reasonable expectations of the contracting parties. All three elements must be satisfied to permit the third party action to go

forward.

*Id.* at 829–30. "While it is not necessary that a third party be specifically named, the contracting parties must clearly manifest their intent to benefit the third party." *Kalmanovitz v. Bitting*, 43 Cal. App. 4th 311, 314 (1996). Specifically, it must appear the parties' intent was to ensure the third party personally benefited from the contract's provisions. *Id.*

Wildpack argues Plaintiff's breach of contract claim fails because (1) Plaintiff has not and cannot allege a direct contractual relationship with Wildpack and (2) the Services Agreement expressly disclaims any intent to benefit third parties. (ECF No. 57 at 12.) In opposition, Plaintiff asserts its claim for breach of contract is adequately pleaded and references a copy of the contract attached to the TAC. (ECF No. 68 at 5.)

Here, as an initial matter, Plaintiff appears to concede that it does not have a direct contractual relationship with Wildpack, as its arguments are focused primarily on whether the Services Agreement was intended to benefit Plaintiff. (ECF No. 68 at 5–6.) Nevertheless, with respect to the first element, Plaintiff still fails to state sufficient facts regarding the existence of a contract to which it could have been a third-party beneficiary. Plaintiff alleges CalNutri entered into a contract with Wildpack "on behalf of Plaintiff" and "Plaintiff is a third-party beneficiary to the contract between CalNutri and Wildpack." (ECF No. 56 ¶ 70.) Plaintiff maintains it attached a copy of the contract to the TAC (ECF No. 68 at 5), which appears to be Exhibit 2 (ECF No. 56-2). However, as was the case with Exhibit 2 to the SAC (ECF No. 55 at 10), Exhibit 2 to the TAC appears to be a Wildpack form contract with numerous blanks that have not been filled-in (even with CalNutri's name and information) and the contract is not signed. (ECF No. 56-2.) Additionally, while not necessarily dispositive, the form contract does contain a "No Third-Party Beneficiaries" provision. (*Id.* at 10.)

Further, Plaintiff asserts paragraph 7 of the TAC alleges a "Third Party Agreement" (attached to the TAC as Exhibit 1) was provided to Plaintiff to be replaced with an actual third-party agreement. (ECF No. 68 at 6.) Indeed, paragraph 7 provides this "Third Party Agreement . . . was to be replaced by the third-party agreement CalNutri eventually entered into

with a manufacturer on behalf of Plaintiff." (ECF No. 56 ¶ 7.) Exhibit 1 contains (1) the CalNutri Agreement, which does not contain any provisions on third-party beneficiaries or agreements, and (2) "Exhibit A", which appears to be a cover page stating "Third Party Agreement Intent Brands, LLC & CalNutri, Inc." (ECF No. 56-1.) There is no indication in this four-page document of the existence of a contract between Plaintiff and Wildpack, or that Plaintiff was intended to be a third-party beneficiary of any contract between CalNutri and Wildpack. Because Plaintiff has not set forth allegations from which the Court could plausibly infer a contractual relationship exists, Plaintiff fails to adequately state the first element and thus fails to state a claim for breach of contract.

The Court has already granted Plaintiff leave to amend this claim and Plaintiff is proceeding on its Third Amended Complaint. Therefore, the Court finds "the pleading could not possibly be cured by the allegation of other facts.'" *Lopez*, 203 F.3d at 1130. Accordingly, Wildpack's motion to dismiss Plaintiff's breach of contract claim (Claim Four) is GRANTED without leave to amend.

C. Intentional Misrepresentation (Claims Eight, Thirteen)

Under California law, the elements of intentional misrepresentation are: "(1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Helo v. Bank of Am. Servicing Co.*, No. 1:14-cv-01522-LJO, 2015 WL 4673890, at *3 (E.D. Cal. Aug. 5, 2015) (internal quotations omitted). Federal courts apply state law to determine whether the elements of fraud have been pleaded adequately to state a cause of action, but Rule 9(b) requires that the circumstances establishing fraud must be stated with sufficient particularity. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003), *superseded by statute on other grounds as stated in Biron v. Amara*, No. 25-cv-2526-BJR, 2026 WL 1678262 (W.D. Wash. June 10, 2026). Specifically, Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The allegations underlying a fraud claim must be "specific enough to give defendants notice of the particular misconduct . . . so that they can

defend against the charge." *Vess*, 317 F.3d at 1106 (internal quotation marks omitted). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Id.* (citing *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). "[A] plaintiff must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Id.* (internal citation omitted). Claims for intentional misrepresentation are fraud-based claims that must meet the heightened pleading standards of Rule 9(b). *Avakian v. Wells Fargo Bank, N.A.*, 827 F. App'x 765, 766 (9th Cir. 2020).

*i. Wildpack's Argument (Claim Eight)*

Wildpack argues the TAC fails to allege any specific misrepresentation with the particularity Rule 9(b) requires, as it merely alleges Wildpack represented products were "cleared for shipping" and does not detail any precise statements that were allegedly made and where the statements occurred. (ECF No. 57 at 14.) Wildpack further argues Plaintiff fails to adequately allege Wildpack knew the statements were false when made, Wildpack had the requisite intent to induce reliance, Plaintiff justifiably relied on the alleged misrepresentations, or that this reliance resulted in damages. (*Id.* at 14–15.) In opposition, Plaintiff asserts the specific misrepresentations are pleaded in paragraphs 99 and 100 of the TAC regarding Thomas Walker's statements, the "nitrogen problem," and failure to include the required lot codes. (ECF No. 68 at 8.) Plaintiff maintains it also pleads the requisite intent to induce reliance, that Wildpack knew the representations were false when made (or made recklessly and without regard for their truth). (*Id.*) Plaintiff also argues its "allegations satisfy the heightened pleading standard for fraud because the requirement for specificity is relaxed when the relevant facts are uniquely within the defendant's knowledge." (ECF No. 68 at 7.)

The Ninth Circuit has held "the general rule that allegations of fraud on information and belief do not satisfy Rule 9(b) may be relaxed with respect to matters within the opposing party's knowledge [because] plaintiffs cannot be expected to have personal knowledge of the relevant facts." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993). The Ninth Circuit cautioned, however, that this exception "does not nullify Rule 9(b)," as "a plaintiff who makes allegations on

information and belief must state the factual basis for the belief." *Id.* The Ninth Circuit further clarified that a fraud complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." *In re Daou Sys., Inc.*, 411 F.3d 1006, 1014–15 (9th Cir. 2005), *abrogated on other grounds by In re Genius Brands Int'l, Inc. Securities Litigation*, 97 F.4th 1171 (9th Cir. 2024) (internal quotation marks and citations omitted). A plaintiff must also allege "with particularity facts giving rise to a *strong* inference that the defendant acted with the required state of mind" — and that "defendants made false or misleading statements either intentionally or with deliberate recklessness." *Id.* (emphasis in original).

With respect to the first element, Plaintiff alleges that in November 2022, "Thomas Walker of Wildpack informed Brandon Martin of CalNutri, who was acting as [Plaintiff's] agent, that if issues arose regarding the first manufacturing run, Wildpack would stand by in the event of a catastrophic production failure at Wildpack." (ECF No. 56 ¶ 99.) Plaintiff further alleges that on or about January 6, 2023,[2] "Penina at CalNutri informed Amy at Intent that Wildpack informed her that they had detected a 'nitrogen problem' during palletization, requiring Wildpack to inspect cans and re-organize the pallets, severely reducing the number of cans that were fit to be cleared for shipping." (*Id.* ¶ 100.) Plaintiff finally alleges "Penina was informed by Wildpack that the remainder of the cans were 'cleared for shipping,'" but not all of the cans "contain[ed] lot code stamps, which is required for beverages manufactured in the U[.]S." (*Id.*)

With respect to the second and third elements, Plaintiff generally alleges Thomas Walker and Wildpack "knew that the representations were false" when they made them or made the representations "recklessly and without regard for the truth" and were made with the intent for Plaintiff to rely on them. (*Id.* ¶¶ 99, 100.) Assuming without deciding that the "relaxed" standard articulated above applies, Plaintiff fails to allege "with particularity facts giving rise to a *strong* inference that the defendant acted with the required state of mind." *In re Daou Sys., Inc.*, 411

[2] The year is cut off in the TAC, but the reasonable inference is January 6, 2023, as the preceding paragraph references events in November 2022. (ECF No. 56 ¶¶ 99, 100.)

F.3d at 1014–15. Plaintiff provides no facts suggesting that Wildpack acted with the requisite state of mind and states in a conclusory fashion that Thomas Walker and Wildpack knew the representations were false and were made with the intent for Plaintiff to rely on them.

The Court has already granted Plaintiff leave to amend this claim and Plaintiff is proceeding on its Third Amended Complaint. Therefore, the Court finds "the pleading could not possibly be cured by the allegation of other facts.'" *Lopez*, 203 F.3d at 1130. Accordingly, Wildpack's motion to dismiss Plaintiff's intentional misrepresentation claim (Claim Eight) is GRANTED without leave to amend.

*ii. Common Collabs's Argument (Claim Thirteen)*

Common Collabs argues Plaintiff fails to add the factual detail establishing the who, what, when, where, and how of the alleged fraud — specifically, Plaintiff fails to identify the individual who made the statement, the context, or the factual basis for its falsity. (ECF No. 61 at 8.) Common Collabs also argues Plaintiff fails to allege facts to demonstrate intent to induce reliance, justifiable reliance, or damages with specificity. (*Id.*) In opposition, Plaintiff maintains its claim alleges a misrepresentation Richard Kim made to Penina in January or early February 2023 that Plaintiff would be listed as additionally insured on Common Collabs's policy. (ECF No. 67 at 9 (citing ECF No. 56 ¶ 167).) Plaintiff asserts a "relaxed pleading requirement should apply here since Plaintiff contends 'the specific communications reflecting Common Collabs'[s] representations are within the exclusive possession and control of Common Collabs and CalNutri.'" (*Id.* at 8 (citing ECF No. 56 ¶ 142).) In reply, Common Collabs contends Plaintiff alleges firsthand conversations and cannot now invoke a relaxed pleading standard for information truly inaccessible to it. (ECF No. 71 at 3.) Common Collabs maintains the TAC still fails to allege where the statement occurred, how it was communicated, or why it was false when it was made. (*Id.*)

Again, assuming without deciding that the "relaxed" standard articulated above applies, Plaintiff still fails to allege "with particularity facts giving rise to a *strong* inference that the defendant acted with the required state of mind." *In re Daou Sys., Inc.*, 411 F.3d at 1014–15. With respect to the first element, Plaintiff alleges "Richard Kim informed Penina that [Plaintiff]

would be listed as an insured on Common Collabs'[s] insurance policy . . . sometime around February [2], 2023, likely via email." (ECF No. 56 ¶ 167.) Plaintiff further alleges the draft manufacturing supply agreement between CalNutri and Common Collabs that it was presented with and approved listed the parties as "Brand," which Amy Cyzy (Plaintiff's representative) "was informed" would be Plaintiff. (*Id.*) According to Plaintiff, the "agreement also listed 'Brand' as additionally insured on Common Collabs'[s] insurance policy." (*Id.*)

With respect to the second element, Plaintiff does not explicitly allege Richard Kim made this representation with knowledge of its falsity. Instead, Plaintiff alleges that after it made its deposit to Common Collabs, "Penina failed to inform Amy that Kim refused to use 'brand' in the agreement and replaced with 'company' to refer to CalNutri, not [Plaintiff] in the assignment of the agreement to CalNutri." (*Id.*) The Court is left to infer and guess that Kim intended to cut out Plaintiff as an insured entity on Common Collabs's insurance policy and therefore Penina made the representation to Amy knowing that it was false. At most Plaintiff alleges that "Common Collabs may have honestly believed the[se] statements were true, but had no reasonable grounds for believing they were true when they were made." (*Id.* ¶ 174.) While "false representations made recklessly and without regard for their truth in order to induce action by another are the equivalent of [intentional] misrepresentations," an honest misstatement of the facts does not satisfy the scienter requirement. *Yellow Creek Logging Corp. v. Dare*, 216 Cal. App. 2d 50, 55, 57 (1963). Thus, Plaintiff's allegations are insufficient.

The Court has already granted Plaintiff leave to amend this claim and Plaintiff is proceeding on its Third Amended Complaint. Therefore, the Court finds "the pleading could not possibly be cured by the allegation of other facts.'" *Lopez*, 203 F.3d at 1130. Accordingly, Common Collabs's motion to dismiss Plaintiff's intentional misrepresentation claim (Claim Thirteen) is GRANTED without leave to amend.

D. Negligent Misrepresentation (Claims Nine, Ten, Eleven)

Under California law, the elements of negligent misrepresentation are the same as intentional misrepresentation — minus the element of intent to induce reliance. *Saldate v. Wilshire Credit Corp.*, 268 F.R.D. 87, 101 (E.D. Cal. 2010) (citing *Cadlo v. Owens-Illinois, Inc.*,

125 Cal. App. 4th 513, 519 (2004)). A negligent misrepresentation claim must also comply with the heightened pleading standards of Rule 9(b). *Id.*

*i. Wildpack's Argument (Claim Nine)*

Wildpack argues Plaintiff fails to allege the material facts Wildpack apparently misrepresented, that Wildpack lacked reasonable grounds for believing it to be true, that Plaintiff justifiably relied on the misrepresentation, or that the misrepresentation caused Plaintiff harm.[3] (ECF No. 57 at 16–17.) In opposition, Plaintiff maintains its claim is sufficiently pleaded in paragraph 105 of the TAC: "Wildpack would stand by in the event of a catastrophic production failure at Wildpack." (ECF No. 68 at 9 (citing ECF No. 56 ¶ 105).) Plaintiff similarly argues its "allegations satisfy the heightened pleading standard for fraud because the requirement for specificity is relaxed when the relevant facts are uniquely within the defendant's knowledge." (*Id.*)

Here, because the elements for a negligent misrepresentation claim are the same as the elements for an intentional misrepresentation claim, minus the element to induce reliance, the Court finds Plaintiff similarly fails to adequately allege a claim for negligent misrepresentation. With respect to the first element, Plaintiff alleges that in November 2022, "Thomas Walker of Wildpack informed Brandon Martin of CalNutri that if issues arose regarding the first manufacturing run, Wildpack would stand by in the event of a catastrophic production failure at Wildpack." (ECF No. 56 ¶ 105.) With respect to the second element, Plaintiff generally alleges Thomas Walker "knew that the representations were false when he made them" or made the representations "recklessly and without regard for the truth." (*Id.*)

Assuming without deciding that the "relaxed" standard articulated above applies, Plaintiff fails to allege "with particularity facts giving rise to a *strong* inference that the defendant acted with the required state of mind." *In re Daou Sys., Inc.*, 411 F.3d at 1014–15. Plaintiff provides no facts suggesting that Wildpack acted with the requisite state of mind and states in a conclusory

[3] Wildpack also argues the economic loss rule bars Plaintiff's negligent misrepresentation claim. (ECF No. 57 at 17.) However, since Plaintiff fails to allege a negligent misrepresentation claim, the Court need not and does not address Wildpack's economic loss rule argument.

fashion that Thomas Walker knew the representations were false.

Because the Court has already granted Plaintiff leave to amend this claim, it finds "the pleading could not possibly be cured by the allegation of other facts.'" *Lopez*, 203 F.3d at 1130. Accordingly, Wildpack's motion to dismiss Plaintiff's negligent misrepresentation claim (Claim Nine) is GRANTED without leave to amend.

*ii. CalNutri's Argument (Claim Ten)*

CalNutri argues Plaintiff repeats allegations that were previously deemed insufficient by the Court. (ECF No. 62-1 at 5.) CalNutri maintains Plaintiff does not allege any facts to describe how, where, or under what circumstances the alleged representation was made, and there is no allegation that Plaintiff was justified in its reliance.[4] (*Id.* at 6.)

In opposition, Plaintiff asserts several distinct misrepresentations are properly pleaded. (ECF No. 64 at 3 (citing ECF No. 56 ¶¶ 119, 120, 123).) Plaintiff contends the TAC further alleges with particularity that in July 2023, CalNutri's representative (Penina) informed Plaintiff's principal (Amy), that the terms "brand" and "company" were interchangeable in the parties' agreement, which induced Plaintiff to pay recall-related expenses under the mistaken belief it would be reimbursed. (*Id.* at 4.) Plaintiff maintains the contract establishes CalNutri was supposed to provide its "expertise" to Plaintiff, and based on this agreement, Plaintiff justifiably relied on CalNutri's statements. (*Id.* at 5.) Plaintiff again argues its "allegations satisfy the heightened pleading standard for fraud because the requirement for specificity is relaxed when the relevant facts are uniquely within the defendant's knowledge." (*Id.* at 5–6.)

As previously discussed, under California law, the elements of negligent misrepresentation are: (1) misrepresentation; (2) knowledge of falsity; (3) justifiable reliance; and (4) resulting damage. *Saldate*, 268 F.R.D. at 101.

Here, with respect to the first element, Plaintiff alleges the following misrepresentations: (1) "the items Plaintiff was having manufactured by Wildpack and Common Collabs were

---

[4] CalNutri also argues the economic loss rule bars the negligent misrepresentation claim. (ECF No. 62-1 at 6.) Because the Court finds Plaintiff fails to plead a negligent misrepresentation claim, it need not and does not address the arguments on the economic loss rule.

merchantable goods" (ECF No. 56 ¶ 119); (2) CalNutri would ensure that Plaintiff would be protected by Wildpack's insurance policies (*id.*); (3) in November 2022, Brandon Martin of CalNutri sent Plaintiff an email that Thomas Walker of Wildpack assured CalNutri that "Wildpack would remedy any manufacturing issues that may arise from production" (*id.*); (4) "in or about February 2023, CalNutri ensured Plaintiff that [it] would be named on the insurance policy as a secondary insured for Common Collabs" (*id.* ¶ 120); and (5) in or about January 2023, CalNutri informed Plaintiff "the product Wildpack deemed fit for commercial release . . . did not have lot codes stamped on all cans, which is a requirement to sell beverages under the FDA" (*id.* ¶ 123). The Court finds Plaintiff fails to remedy the deficiencies in these allegations that the Court identified in its prior Order — namely, it fails to sufficiently allege the knowledge of falsity element. Assuming without deciding that the "relaxed" standard articulated above applies, Plaintiff fails to allege "with particularity facts giving rise to a *strong* inference that the defendant acted with the required state of mind." *In re Daou Sys., Inc.*, 411 F.3d at 1014–15. Plaintiff provides no facts suggesting that Brandon Martin or anyone at CalNutri acted with the requisite state of mind and states in a conclusory fashion that "Defendant" knew the representations were false. (ECF No. 56 ¶¶ 119, 124.) As such, these allegations are insufficient.

As the parties note, Plaintiff also alleges a new misrepresentation in the TAC:

> In July 2023, Penina informed Amy that the titles "brand" and "company" were interchangeable in the Common Collabs agreement. Although Penina may have honestly believed that the representation was true, she had no reasonable grounds for believing the representation was true when she made it. Penina intended that Intent rely on this representation and Intent did so by making payments towards the recall related expenses under belief these were covered and reimbursable under the Manufacturer's (Common Collabs) policy.

(*Id.* ¶ 121.) Elsewhere in the TAC, Plaintiff alleges that under the Common Collabs agreement, "Plaintiff, as the brand, would be named as additionally insured under the Manufacturer's policy since Plaintiff was unable to obtain such coverage on its own." (*Id.* ¶ 29.) Plaintiff further alleges:

> Inclusion of Plaintiff on the manufacturing policy was essential. Plaintiff was enticed to proceed with the purchase orders for Common Collabs under the provision of recall protection under the

> manufacturer's primary policy. CalNutri failed to ensure that Plaintiff was named as additionally insured prior to production and had changed the agreement to replace "brand" with "company," which Mr. Kim of Common Collabs later exploited after contamination was confirmed.

(*Id.* ¶ 30.)

Even in light of these additional allegations, the Court is forced to guess how "brand" and "company" being interchangeable in the Common Collabs agreement would lead to Plaintiff making payments toward recall-related expenses and thinking that these expenses were covered and reimbursable.[5] (*See* ECF No. 56 ¶ 121.) Plaintiff fails to explicitly spell out the first element of misrepresentation. Finally, Plaintiff does not allege the third element — that it was justified in relying on Penina's statement. (*See id.*) Accordingly, again assuming without deciding the "relaxed standard" applies, the allegations are insufficient.

Because the Court has already granted Plaintiff leave to amend this claim, it finds "the pleading could not possibly be cured by the allegation of other facts.'" *Lopez*, 203 F.3d at 1130. Accordingly, CalNutri's motion to dismiss Plaintiff's negligent misrepresentation claim (Claim Ten) is GRANTED without leave to amend.

*iii. Common Collabs's Argument (Claim Eleven)*

Common Collabs argues Plaintiff's negligent misrepresentation claim still fails to allege any misrepresentation subjected Plaintiff to independent personal liability or arose from a duty outside the contract. (ECF No. 61 at 7.) Common Collabs maintains the claim continues to seek only economic damages and is barred by the economic loss rule. (*Id.* at 7–8.) In opposition, Plaintiff asserts its case is analogous to *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 990–91 (2004), as Common Collabs's affirmative misrepresentation that Plaintiff would be

---

[5] CalNutri argues Plaintiff fails to allege facts to indicate Penina's statement to Amy was anything more than an opinion. (ECF No. 62-1 at 6.) In opposition, Plaintiff asserts Penina's statement should be regarded as a representation of fact, as CalNutri was to provide its "expertise" to Plaintiff. (ECF No. 64 at 4–5.) Assuming without deciding that Penina made a representation of fact (versus a representation of opinion), the Court nevertheless finds the allegations are insufficient to explain under what circumstances Penina made that representation to Amy.

protected under Common Collabs's insurance policy exposed Plaintiff to personal and business damages. (ECF No. 67 at 7.) Plaintiff further asserts Common Collabs's failure to include Plaintiff as an insured and Common Collabs's representation that it would file an insurance claim on Plaintiff's behalf constitutes tortious conduct independent of the breach. (*Id.* at 8.) In reply, Common Collabs contends the Court has already rejected these arguments and the TAC does not allege any consumer was injured, any regulatory action was taken, or that Plaintiff incurred any independent third-party liability. (ECF No. 71 at 4.)

The economic loss rule is the principle that in a tort action, "a plaintiff generally cannot recover for financial harm that results from injury to the person or property of another." Economic Loss Rule, Black's Law Dictionary (12th ed. 2024). The economic loss rule "requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise." *Robinson Helicopter*, 34 Cal. 4th at 988. Thus, the rule has been generally applied to bar general negligence claims. *Id.* at 989 (citing *Aas v. Superior Court*, 24 Cal. 4th 627, 640 (2000), *superseded by statute on other grounds as stated in S. California Gas Leak Cases*, 7 Cal. 5th 391 (2019); *Seely v. White Motor Co.*, 63 Cal. 2d 9 (1965)); *see also Sheen v. Wells Fargo Bank, N.A.*, 12 Cal. 5th 905, 923 (2022) (noting that, while not all tort claims are barred by the economic loss rule, "such claims are barred when they arise from — or are not independent of — the parties' underlying contracts"). Put another way, the economic loss rule provides that "[i]n general, there is no recovery in tort for negligently inflicted 'purely economic losses,' meaning financial harm unaccompanied by physical or property damage." *Rattagan v. Uber Techs., Inc.*, 17 Cal. 5th 1, 20 (2024) (emphasis in original) (quoting *Sheen*, 12 Cal. 5th at 922); *see also Seely*, 63 Cal. 2d at 18 (finding tort recovery unavailable where a buyer sued in contract alleging a manufacturer breached an express contractual warranty of fitness by selling a defective truck but "the defect did not cause any personal injury or damage to property other than to the truck itself"); *Aas*, 24 Cal. 4th at 640 (applying economic loss rule "to bar homeowner claims in tort for diminution of value due to multiple construction defects that did not otherwise cause physical injury or property damage").

Here, Plaintiff alleges Common Collabs made several false representations, including that Plaintiff "would be listed as an additionally insured on Common Collabs'[s] insurance policy for the production of [its] products," "Common Collabs would file an insurance claim for the recalled products," and "H[eat Resistant Mold] testing was conducted and confirmed that no HRM mold was present in Common Collabs'[s] facility, and the cause of mold was a result of [Plaintiff's] ingredients." (ECF No. 56 ¶ 135.) On June 9, 2023, Plaintiff allegedly began to receive consumer complaints and photos indicating mold growth and a contamination problem, believed to be from the manufacturing at Common Collabs. (*Id.* ¶ 25.) Plaintiff alleges, as a result of this contamination issue, it was forced to stop sales despite its financial obligations, contact customers to discard the defective product, refund orders, intercept product sent to a children's event in Florida, and pull product from distributors and buyers. (*Id.*) Plaintiff also lists its monetary damages and what it owes to which entities. (*Id.* ¶ 46.)

Again, the Court finds Plaintiff fails to adequately explain how the leaking cans resulted in physical or property damage beyond the cans themselves (and the associated damaged promotional stickers, cans, wraps, and commercial packaging). It appears Plaintiff cannot demonstrate "harm above and beyond a broken contractual promise" — namely, to manufacture the cans adequately for sale. *Robinson Helicopter*, 34 Cal. 4th at 988. Plaintiff further fails to explain how the nature of its relationship to Common Collabs or the loss of product and associated costs fits into an exception that would allow Plaintiff to recover for expected economic loss through a claim for negligent performance of a contract.

*Robinson Helicopter* is distinguishable from the facts of this case. In *Robinson Helicopter*, the California Supreme Court concluded defendant's tortious conduct was separate from the breach of contract, as it supplied "false certificates of conformance" on which plaintiff relied to accept delivery, use nonconforming clutches for several years, and "incurred the cost of investigating the cause of the faulty clutches." 34 Cal. 4th at 991. Further, the Court noted defendant's provision of faulty clutches exposed plaintiff "to liability for personal damages if a helicopter crashed and to disciplinary action by the [Federal Aviation Administration]." *Id.* (citing *Erlich v. Menezes*, 21 Cal. 4th , 543, 553–54 (1999)). By contrast, Common Collabs is

correct the TAC does not allege any consumer was injured, that Plaintiff was exposed to liability for personal damages, or that any regulatory action was or could be taken against Plaintiff. (ECF No. 71 at 4; *see also* ECF No. 56.) Moreover, the statements at issue in *Robinson Helicopter* were alleged to constitute fraud and *intentional* misrepresentation, whereas, in Claim Eleven, Plaintiff alleges negligent misrepresentation. 34 Cal. 4th at 991–92 (describing the defendant's statements as "dispositive fraudulent conduct related to the performance of the contract" and discussing the public policy behind allowing independent fraud claims in breach of contract actions).

Further, Common Collabs is correct that in its August 22, 2025 Order, the Court cited to *Crystal Springs Upland School v. FieldTurf USA, Inc.*, in which the court held "that a negligent misrepresentation claim paralleling a contract claim that prays only for economic damages will be barred by the economic loss rule unless the plaintiff alleges both that the defendant made an affirmative misrepresentation, and that the defendant's misrepresentation exposed the plaintiff to independent personal liability." 219 F. Supp. 3d 962, 970 (N.D. Cal. 2016) (citing *Robinson Helicopter*, 34 Cal. 4th at 933). (ECF No. 55 at 22.) As stated above, despite the numerous financial issues Plaintiff allegedly encountered, Plaintiff fails to allege facts showing an affirmative misrepresentation that exposed it to independent personal liability.

Because the Court has already granted Plaintiff leave to amend this claim, it finds "the pleading could not possibly be cured by the allegation of other facts.'" *Lopez*, 203 F.3d at 1130. Accordingly, Common Collabs's motion to dismiss Plaintiff's negligent misrepresentation claim (Claim Eleven) is GRANTED without leave to amend.

## IV. CONCLUSION

For the foregoing reasons, Wildpack's Motion to Dismiss (ECF No. 57), CalNutri's Motion to Dismiss (ECF No. 62), and Common Collabs's Motion to Dismiss (ECF No. 61) are GRANTED without leave to amend. The case shall proceed on Plaintiff's remaining claims in the TAC. Defendants shall file their answers within twenty-one (21) days of the electronic filing date of this Order.

//

IT IS SO ORDERED.

DATE: August 26, 2026

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE